Paul SCAGNELLI, Plaintiff,

v.

Albert N. WHITING, Individually and in his official capacity as Chancellor, North Carolina Central University; Leslie Brinson, Individually and in his official capacity as Chairman, Department of Psychology, North Carolina Central University; C.L. Patterson, Individually and in his official capacity as Vice Chancellor for Academic Affairs, North Carolina Central University; Joseph A. Pittman, Individually and in his official capacity as Dean of the Graduate School, North Carolina Central University; Walter Pattillo, Individually and in his official capacity as Dean of the Undergraduate School, North Carolina Central University; North Carolina Central University; William C. Friday, President, University of North Carolina, in his official capacity only; and the University of North Carolina, Defendants.

No. C–79–596–D.

United States District Court,
M.D. North Carolina,
Durham Division.

Dec. 1, 1982.

Thomas F. Loflin, III, of Loflin & Loflin, Durham, N.C., for plaintiff.

Rufus K. Edmisten, Atty. Gen. of North Carolina, Edwin M. Speas, Jr., Deputy Atty. Gen., North Carolina Dept. of Justice, Raleigh, N.C., for defendants.

## MEMORANDUM ORDER

HIRAM H. WARD, Chief Judge.

This matter came on for jury trial on November 8, 1982. Plaintiff was employed by defendant North Carolina Central University (NCCU) from 1973 until 1980. The individual defendants, except William Friday, were plaintiff's superiors at NCCU. Friday is President of defendant University of North Carolina. In 1979, plaintiff was

denied tenure and given a one-year terminal contract of employment. Plaintiff contended that he had acquired *de facto* tenure and that defendants violated his due process rights in so terminating him. He also contended that defendants discriminated against him because of his race and violated his First Amendment right to free speech. Plaintiff sought compensatory and punitive damages, reinstatement and injunctive relief under the Civil Rights Acts, 42 U.S.C. §§ 1983, 1984, 1985(3) and 1986, as well as Title VI of the 1964 Civil Rights Act, 42 U.S.C. § 2000d.

At the close of plaintiff's evidence, defendants moved for a directed verdict on all claims for relief. Finding that plaintiff had presented evidence sufficient to raise a jury question on only the First Amendment claim, the Court granted defendants' motion as to all other claims. The First Amendment claim was submitted to the jury, who returned a verdict in favor of plaintiff with damages totalling $500,000.00. Because the damage award was grossly in excess of the injury shown by plaintiff's evidence and in direct conflict with the Court's instructions, the Court set aside the verdict and ordered a new trial.

A. *The Directed Verdicts*

In ruling on a motion for directed verdict, the test is whether, taking the evidence in the light most favorable to the non-movant, there is substantial evidence to support a verdict in his favor. *Brady v. Allstate Insurance,* 683 F.2d 86, 89 (4th Cir.1982); 9 C. Wright & A. Miller, *Federal Practice & Procedure* § 2524 (1971). Plaintiff's evidence failed to meet this test on either his due process or reverse discrimination claims.

1. *Due Process*

Plaintiff may not invoke the guarantees of the due process clause of the Fourteenth Amendment until he has shown that the defendants deprived him of a protected property interest in employment. *Kilcoyne v. Morgan,* 664 F.2d 940, 942 (4th Cir.), *cert. denied,* 456 U.S. 928, 102 S.Ct.

1976, 72 L.Ed.2d 444 (1982). At institutions of higher learning tenure constitutes a promise of continued employment and, as such, is a protected property right. *See Mayberry v. Dees,* 663 F.2d 502, 513–519 (4th Cir.1981) (discussion of the status of tenure at universities). During plaintiff's employment at NCCU, conferral of tenure was governed by formal, published procedures and regulations. NCCU never officially conferred tenure on plaintiff, but he nonetheless claims that he acquired *de facto* tenure and that defendants violated his due process rights by terminating his employment without notice and a hearing.

Although tenure need not always be acquired through formal procedures, *Perry v. Sinderman,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), it must be based on a mutually explicit understanding of the practices or customs which give rise to the claimed entitlement. *Leis v. Flynt,* 439 U.S. 438, 99 S.Ct. 698, 58 L.Ed.2d 717 (1979); *Roth v. Board of Regents,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Where a university has published written procedures governing tenure, the legitimacy of a claim to tenure acquired *outside* those procedures is vitiated because there is no basis for mutuality. *E.g., Beitzell v. Jeffrey,* 643 F.2d 870 (1st Cir.1981); *Haimowitz v. University of Nevada,* 579 F.2d 526 (9th Cir.1978). *See also Sheppard v. Board of Regents,* 516 F.2d 826 (4th Cir.1975).

Plaintiff's evidence showed that he was first employed by defendant NCCU for the 1973–1974 school year and reemployed each year thereafter until the end of the 1979–1980 school year. Plaintiff contends that he automatically acquired tenure in the 1975–1976 school year, his third year, simply by virtue of being employed. He bases his claim on a single sentence from the Faculty Handbook. Plaintiff's Trial Exhibit No. 15.

Under the section entitled "Eligibility for Tenure," the handbook provided that Associate Professors were to be employed for a probationary period of two years. The handbook then stated "[t]he subsequent ap-

pointment shall carry tenure." p. 32. This sentence, and plaintiff's own singular interpretation of it, was the only evidence presented in support of plaintiff's tenure claim.

Other evidence, including plaintiff's contracts and salary notifications for the school years from 1973 through 1977, indicated that NCCU did *not* consider plaintiff to be a tenured employee. (Plaintiff's Trial Exhibits Nos. 11, 13, 16, 17 & 18). *Cf. Soni v. Board of Trustees of the University of Tennessee,* 513 F.2d 347 (6th Cir.1975), *cert. denied,* 426 U.S. 919, 96 S.Ct. 2623, 49 L.Ed.2d 372 (1976). More importantly, however, on the same page where the above quoted eligibility requirements are found the regulations bluntly state that "[t]enure may be granted *only* by the Board of Trustees upon nomination of the President." (emphasis added). Specific procedures for recommendation and notification of tenure are found on the preceding page. These provisions explicitly indicate that tenure could not be acquired at NCCU unless regular, official procedures were followed. Neither plaintiff's desire to be tenured nor his own unilateral interpretation of a single sentence lifted out of context satisfy the requirement that a property interest be based on a *mutually* explicit understanding. *Leis v. Flynt,* 439 U.S. at 443, 99 S.Ct. at 701, 58 L.Ed.2d at 722. Absent a protected property interest the due process claim must necessarily fail. Therefore, the Court granted defendants' motion for a directed verdict on this claim.[1]

### 2. *Reverse Discrimination*

▮ Plaintiff contended that the individual defendants Whiting, Brinson, Patterson, Pittman and Pattillo had discriminated against him because of his race. Complaint ¶ 35 (September 24, 1979). In order to prevail under § 1983, plaintiff had the burden of proving the defendants' "discriminatory purpose in taking employment actions ad-

verse to [him]." *Kim v. Coppin State College,* 662 F.2d 1055, 1058 (4th Cir.1982). Plaintiff failed to carry this burden. He did not present any direct evidence of conduct motivated by racial discrimination or any circumstantial proof raising an inference of discrimination. Plaintiff's reverse discrimination claims were supported by nothing more than speculation and conjecture. Thus, the Court granted defendants' motion for directed verdict on the 42 U.S.C. §§ 1983 and 2000d claims.

Similarly, plaintiff presented no evidence that the defendants, or any of them, conspired or agreed to deprive plaintiff of his civil rights because of his race. Therefore, the Court granted defendants' motion for directed verdict on the 42 U.S.C. §§ 1985(3) and 1986 claims as well. *See generally Talbert v. City of Richmond,* 648 F.2d 925 (4th Cir.1981), *cert. denied,* 454 U.S. 1145, 102 S.Ct. 1006, 71 L.Ed.2d 297 (1982).

### 3. *Miscellaneous*

One of the administrators named as a defendant was Walter Pattillo, Dean of the Undergraduate School at NCCU. Because no evidence was presented linking Dean Pattillo to any of the events of which plaintiff complained, defendants' motion for a directed verdict in favor of Dean Pattillo on all claims was granted. The Court also granted defendant's unopposed motion for directed verdict on plaintiff's sixth claim for relief, in which he alleged that defendant Friday failed to properly supervise and control the other defendants. An order formalizing the disposition of all claims except plaintiff's First Amendment claim, as discussed above, shall be entered accordingly.

### B. *The Jury Verdict*

After the motions for directed verdict, the only issue remaining for the jury was plaintiff's claim that defendants violated

---

1. Plaintiff also claimed that his due process rights were violated by defendants' failure to follow the university's regulations concerning tenure. This theory was not vigorously pressed at trial, perhaps wisely, since *Kilcoyne v. Morgan,* 664 F.2d 940 (4th Cir.1982), *cert. denied,* —— U.S. ——, 102 S.Ct. 1976, 72 L.Ed.2d 444 (1982), conclusively establishes that federal statutes provide no relief.

his First Amendment right to free speech arising out of a plagiarism incident when they denied him tenure and discharged him from employment. The jury answered the liability issues in favor of plaintiff, and awarded $300,000.00 in compensatory damages and $200,000.00 in punitive damages against defendants Whiting, Brinson, Patterson and Pittman.[2] Upon receipt of the verdict defendants moved for judgment notwithstanding the verdict or in the alternative for a new trial. The Court granted the motion for new trial.

It is a well established rule that a district court may set aside the verdict and grant a new trial when the damage award of the jury is excessive. *Occidental Life Insurance Co. of North Carolina v. Pat Ryan & Associates*, 496 F.2d 1255, 1264 (4th Cir.), *cert. denied*, 419 U.S. 1023, 95 S.Ct. 499, 42 L.Ed.2d 297 (1974). The Fourth Circuit has held "[w]here a verdict is so excessive that it cannot be justified by anything in the record or of which the Court can take judicial notice, it is the duty of the judge to set it aside." *Virginia Railway v. Armentrout*, 166 F.2d 400, 407 (4th Cir. 1948).

In the instant case, the damage award far exceeded any reasonable compensation for the injuries plaintiff was able to

demonstrate. The disproportionate enormity of the award convinced the Court that the entire verdict was tainted and was the result of passion, sympathy or prejudice rather than an objective consideration of the facts.

The jury was instructed that if they found defendants had violated plaintiff's First Amendment rights, then the plaintiff was entitled to back pay and lost benefits from the time of discharge to the *time of trial*. They were also instructed that they could award compensation for any humiliation, pain or suffering proximately caused by defendants' wrongful conduct. Plaintiff's evidence showed that his annual salary at the time of discharge was $24,498.00. Plaintiff's Trial Exhibit No. 25. Plaintiff was discharged from NCCU at the close of the 1980 school year, approximately 2 years prior to the date of the trial. Plaintiff testified that he thereafter suffered tension, anxiety, loss of sleep, and pain due to aggravation of an existing ulcer condition. Plaintiff's doctor testified that he treated plaintiff for the ulcer once in the fall of 1979 and that the price of an office visit at that time was $25.00. Plaintiff testified that he was hospitalized for several days in 1980 due to stress and that he sought psychological counseling, but no other evidence of medical expenses was introduced. This

---

2. Five issues were submitted to the jury and answered as follows:

1. Did the defendants, Whiting, Brinson, Patterson and Pittman, or any of them, deny plaintiff tenure, discharge him from employment or otherwise retaliate against plaintiff because of his criticism and objections in the grade changing incident?

| | |
|---|---|
| Answer as to defendant Whiting | Yes |
| Answer as to defendant Brinson | Yes |
| Answer as to defendant Patterson | Yes |
| Answer as to defendant Pittman | Yes |

2. Did the plaintiff's objections, criticisms and disagreement in the grade changing incident undermine discipline at North Carolina Central University, show an uncooperative or hostile attitude, jeopardize a close working relationship between plaintiff and his superiors, or disrupt the efficient operation of the University?

| | |
|---|---|
| Answer: | No |

3. If the defendants Whiting, Brinson, Patterson and Pittman, or any of them, denied plaintiff tenure, discharged him from employment or otherwise retaliated against plaintiff because of his criticism and objection in the grade

changing incident, did they have a reasonable belief that their actions were lawful?

| | |
|---|---|
| Answer as to defendant Whiting | No |
| Answer as to defendant Brinson | No |
| Answer as to defendant Patterson | No |
| Answer as to defendant Pittman | No |

4. If the plaintiff was denied tenure, discharged from employment or otherwise retaliated against because of his criticism and objections in the grade changing incident, what amount of damages, if any, is plaintiff entitled to recover?

| | |
|---|---|
| Answer: | $300,000.00 |

5. If the plaintiff was denied tenure, discharged from employment or otherwise retaliated against because of his criticism and objections in the grade changing incident, and the defendants' actions in so doing were malicious, wanton or oppressive, what amount of punitive damages, if any, is plaintiff entitled to recover from the defendant or defendants?

| | |
|---|---|
| Answer as to defendant Whiting | $50,000.00 |
| Answer as to defendant Brinson | $50,000.00 |
| Answer as to defendant Patterson | $50,000.00 |
| Answer as to defendant Pittman | $50,000.00 |

**82**

evidence simply cannot justify a compensatory damage award of $300,000.00.[3]

As for the punitive damage award, plaintiff's evidence of wanton or malicious conduct by defendants was tenuous, while defendants' evidence of good faith was quite strong and largely uncontroverted. Moreover, the defendants' involvement in the alleged wrongdoing varied considerably, yet the jury awarded identical punitive damages against each.

In sum, the damage award shocked the conscience of the Court, and its inordinate size called into question the validity of the entire verdict.[4] For this reason remittitur was not a proper solution. Where, as here, passion, sympathy or prejudice has crept into the jury's verdict and infected its decision on liability as well as damages, a new trial on all issues is required. *Ford Motor Co. v. Mahone*, 205 F.2d 267, 272 (4th Cir. 1953); 11 C. Wright & A. Miller, *Federal Practice & Procedure* §§ 2807, 2815 (1973).

IT IS, THEREFORE, ORDERED that defendants' motion for directed verdict be, and the same hereby is, DENIED as to plaintiff's First Amendment claim under 42 U.S.C. § 1983, but GRANTED as to all other claims and as to all claims against the defendant Pattillo.

IT IS FURTHER ORDERED that defendants' motion for judgment notwithstanding the verdict be, and the same hereby is, DENIED, and that defendants' motion for a new trial on plaintiff's First Amendment claim be, and the same hereby is, GRANTED.

---

**3.** In closing argument, plaintiff's counsel asked the jury to award an enormous sum, erroneously arguing that plaintiff was entitled to be compensated for *the rest of his life.* Despite the Court's express instructions to the contrary, the jury appears to have been improperly influenced. *See Watkins v. Continental Can Co.*, 225 F.Supp. 449, 456 (M.D.N.C.1963), *aff'd in pertinent part*, 332 F.2d 423 (4th Cir.1964).

**4.** Although the jury was advised that they should render their verdict solely on plaintiff's First Amendment claim, the probability remains that evidence presented on plaintiff's other claims was nonetheless improperly considered.