EDWARD PRESSMAN AND MAURICE HERMAN v. THE UNIVERSITY OF NORTH CAROLINA AT CHARLOTTE, AND C. C. HIGHT, AS AN INDIVIDUAL AND AS DEAN OF THE COLLEGE OF ARCHITECTURE OF THE UNIVERSITY OF NORTH CAROLINA AT CHARLOTTE

No. 8526SC173

(Filed 17 December 1985)

1. **Constitutional Law § 18— visiting professor—dismissal for statements in faculty meeting—right of free speech not violated**

    Plaintiff visiting professor's right of free speech was not violated by his alleged dismissal from a college teaching position because of statements he made in a faculty meeting concerning the dean's lack of administrative competence because the statements were not upon a matter of public concern.

2. **Constitutional Law § 18; Master and Servant § 10— untenured professors— terminable contracts—no due process right to continued employment**

    Where professors at a state university were not tenured and were employed under terminable contracts, they had no property right in continued employment which was protected by due process. Thus, failure of the university to follow procedures concerning reappointment set forth in the Code of the Board of Governors of the University of North Carolina and the Tenure Policies manual would not support claims by the professors under the Fourteenth Amendment.

3. **Master and Servant § 1— occasional stress and depression not "handicap"**

    A person suffering from occasional episodes of stress, depression and mental exhaustion does not have a mental "disability" within the meaning of N.C.G.S. 168-1 and thus is not a "handicapped person" who is protected in employment by N.C.G.S. 168-6.

4. **Contracts § 27.1— existence of contracts—insufficient evidence**

    Plaintiff university professor failed to show that he had a contract with the dean whereby plaintiff would not appeal his dismissal any further in return for a final review of his dismissal by the dean similar to a final review given to another professor where the evidence showed that plaintiff and the dean never reached a mutual understanding as to what constituted a final review and when such a review would be performed.

5. **Rules of Civil Procedure § 15.1— refusal to allow amendment to complaint**

    The trial court did not err in the denial of plaintiffs' motion to amend their complaint where the amendment sought to add an additional cause of action one year and seven months after the original filing of the complaint and only seven days before the hearing of a motion for summary judgment; the motion was filed nine months after extended discovery conducted in the case had been completed; and the trial court found that the amendment would result in undue delay and undue prejudice to defendants because extensive additional discovery would be required by the amendment.

APPEAL by plaintiffs from *Snepp, Judge.* Order entered 2 October 1984 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 25 September 1985.

*Attorney General Lacy H. Thornburg by Assistant Attorney General Thomas J. Ziko for the defendant appellees.*

*Shelley Blum and Deborah Blum for plaintiff appellants.*

COZORT, Judge.

Plaintiffs brought an action seeking damages and reappointment to teaching positions at the College of Architecture of the University of North Carolina at Charlotte. Plaintiff Herman was employed from August 1980 until May 1982 as a visiting professor under a fixed term contract which provided that his position was exempt from permanent tenure consideration. At the end of that two-year term, Herman was denied reappointment. Plaintiff Pressman was an Assistant Professor from August 1978 until May 1982. At the conclusion of that initial four-year appointment, he was denied reappointment. In the complaint, plaintiff Herman alleges deprivation of his First Amendment right to free speech and his Fourteenth Amendment right to due process, while plaintiff Pressman alleges discrimination because he was handicapped, breach of contract, and a violation of his right to due process. The trial court granted summary judgment for the defendants on all claims and denied plaintiffs' motion to amend the complaint to add a claim based on ethnic discrimination. We affirm.

The evidentiary forecast for plaintiff Herman is as follows:

From August 1980 until May 1982, Maurice Herman was a visiting professor of Architecture at the University of North Carolina at Charlotte's College of Architecture. His appointment was made subject to the provisions of *The Code of the Board of Governors of the University of North Carolina* and the *Tenure Policies, Regulations, and Procedures of the University of North Carolina at Charlotte.* Herman's contract explicitly stated that his position was exempt from permanent tenure consideration. The *Code* provides that the appointment of visiting faculty is for a specified term, and expiration of the term shall be deemed to constitute full and timely notice of nonreappointment.

In February of 1982, Herman informed the Dean of the College of Architecture, Charles Hight, a defendant in this action, that he would like to be considered for a tenure track position at the College. Pursuant to his request, Herman submitted his resume to the Faculty Review Committee, the Committee responsible for reviewing faculty applications, and was allowed to make a presentation before the committee. Although the Faculty Review Committee recommended that Herman receive an additional two-year appointment, Dean Hight, after a review of Herman's qualifications, denied Herman reappointment in June of 1982. Herman then appealed Dean Hight's decision to Dr. James H. Werntz, Vice Chancellor of the University of North Carolina at Charlotte, and was again denied reappointment.

In May of 1982 while Dean Hight was considering his reappointment, Herman attended a faculty meeting where the faculty discussed Dean Hight's lack of administrative competence. At the meeting, Herman expressed his concern over the lack of opportunity for personal development because of a heavy workload, lack of guidance for grading, failure to develop a master's program, failure to recruit quality students and faculty, and inadequate or inappropriate educational direction for the College of Architecture. As a result of this meeting, the majority of the faculty, including Herman, gave Dean Hight a vote of no confidence. Although the vote was by secret ballot, Dean Hight later learned the results of the vote.

The evidentiary forecast for plaintiff Pressman is as follows:

From August 1978 until May 1982, Edward Pressman was appointed an Assistant Professor of Architecture at the University of North Carolina at Charlotte's College of Architecture. Pressman's appointment was made subject to *The Code of the Board of Governors of the University of North Carolina* and the *Tenure Policies, Regulations, and Procedures of the University of North Carolina at Charlotte.* The *Tenure Policies* provide that before the end of the third year of the initial appointment as assistant professor, the faculty member shall be reviewed for reappointment, promotion, and/or permanent tenure and shall receive written notice of the review.

The Faculty Review Committee, the faculty committee responsible for reappointment recommendations, after reviewing

Pressman's performance, recommended nonreappointment. On 5 January 1981, Pressman was notified by Dean Hight that his appointment as Assistant Professor of Architecture would not be renewed. Pressman appealed this decision to the College Review Committee, the committee responsible for reviewing appeals. On 26 January 1981 the College Review Committee recommended reappointment. On 11 February 1981, Dean Hight informed Pressman that after reviewing the advice from the Faculty Review Committee and the College Review Committee he would not recommend reappointment of Pressman.

Pressman stated in his deposition that Dean Hight on several occasions in 1981 promised him a final review during the fourth and final year of his appointment. He stated that this review was to be by the Faculty Review Committee and Dean Hight and was to be similar to a final review recently given another professor. On 28 May 1982, Dr. Werntz informed Pressman that his request for additional review was denied because he was not entitled to any further review under the review procedures of the College of Architecture.

During his employment at the College of Architecture, Pressman suffered from stress, depression and mental exhaustion which required him to be hospitalized for two weeks in the summer of 1980 and an additional two weeks in October and November of the 1980-81 academic year. Dean Hight took over Pressman's class during his absence in October and November. According to Mr. Pressman, his illness has been cured and he is now able to function normally in society. Pressman's illness was taken into consideration by Dean Hight and the Faculty Review Committee during Pressman's evaluation for reappointment.

The plaintiffs alleged several causes of action in their complaint. As to Herman, the complaint alleges that he was deprived of his First Amendment right to freedom of speech because he was fired for his criticism of Dean Hight and deprived of his due process rights guaranteed by the Fourteenth Amendment because the defendants failed to follow their procedures for reappointment. As to Pressman, the complaint alleges that Pressman was denied employment because of his mental health handicap; denied a final review which resulted in a breach of contract; and deprived of his due process rights guaranteed by the Fourteenth

Amendment because the defendants failed to follow their procedures for reappointment. The trial court granted summary judgment for the defendants on all of plaintiffs' causes of action. In addition, the trial court denied plaintiffs' motion to amend their complaint to add an additional cause of action against the defendants and allowed severance of the actions filed by Pressman and Herman, ordering each to proceed separately to trial.

The standard for reviewing a summary judgment motion is:

> [W]hether the pleadings, depositions, answers to interrogatories, and admissions . . . together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a party is entitled to judgment as a matter of law. [Citations omitted.] The burden upon the moving party is to establish that there is no genuine issue as to any material fact remaining to be determined. . . . The purpose of summary judgment is to eliminate formal trials where only questions of law are involved by permitting penetration of an unfounded claim or defense in advance of trial and allowing summary disposition for either party when a fatal weakness in the claim or defense is exposed. [Citations omitted.]

*Gregory v. Perdue, Inc.*, 47 N.C. App. 655, 656-57, 267 S.E. 2d 584, 586 (1980).

[1] We first consider Herman's claim under the First Amendment to the United States Constitution. Public employment may not be conditioned on criteria that infringes the employees' protected interest in freedom of expression. *Keyishian v. Board of Regents of New York*, 385 U.S. 589, 605-06, 17 L.Ed. 2d 629, 642, 87 S.Ct. 675, 684-85 (1967). An employee may not be discharged for expression of ideas on a matter of public concern. *Jones v. Dodson*, 727 F. 2d 1329, 1333-34 (4th Cir. 1984). The expression need not be public but may be made in a private conversation. *Givhan v. Western Line Consolidated School District*, 439 U.S. 410, 58 L.Ed. 2d 619, 99 S.Ct. 693 (1979).

To make out a claim under the First Amendment, the employee must show that his speech is concerning a matter of public concern. *Connick v. Myers*, 461 U.S. 138, 75 L.Ed. 2d 708, 103 S.Ct. 1684 (1983). A matter is of public concern if when fairly considered it relates "to any matter of political, social, or other con-

cern to the community." *Id.* at 146, 75 L.Ed. 2d at 719, 103 S.Ct. at 1690. The context, form, and content of the employee's speech as revealed by the whole record are used to determine the nature of the speech. *Id.* at 147-48, 75 L.Ed. 2d at 720, 103 S.Ct. at 1690. Whether speech is a matter of public concern is a question of law for the courts to decide. *Id.* at n. 7, 75 L.Ed. 2d at 720, n. 7, 103 S.Ct. 1690, n. 7.

If the speech is upon a matter of public concern, there must be a " 'balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.' " *Id.* at 142, 75 L.Ed. 2d at 717, 103 S.Ct. at 1687, *quoting Pickering v. Board of Education*, 391 U.S. 563, 568, 20 L.Ed. 2d 811, 817, 88 S.Ct. 1731, 1734-35 (1968). The balancing of interests is a question of law for the courts. *Id.* at 150, n. 10, 75 L.Ed. 2d at 722, n. 10, 103 S.Ct. at 1692, n. 10.

In *Lewis v. Blackburn*, 759 F. 2d 1171 (4th Cir. 1985), the Fourth Circuit Court of Appeals interpreted the public concern standard of *Connick* to mean that a magistrate who was not reappointed because she voiced her opposition to being required to perform clerical duties such as microfilming had not made out a claim under the First Amendment because her complaints were directed to her own personal work and not matters of public concern. (See dissent of Ervin, J., in original case before the Fourth Circuit Court of Appeals at 734 F. 2d 1000, 1008-12 (4th Cir. 1984), adopted by the Fourth Circuit Court of Appeals on rehearing at 759 F. 2d 1171.) The Fourth Circuit Court of Appeals took into consideration the context, form, and content of the speech in reaching its conclusion. *Id.*

Under the facts of this case, we find that Herman's speech was not upon a matter of public concern. His speech can be more accurately described as an employee grievance concerning internal policy. Herman's speech during the meeting concerned Dean Hight's lack of administrative competence. In particular, Herman expressed concern over his lack of opportunity for personal growth because of a heavy workload, lack of guidance for grading, and the Dean's failure to develop a master's program and a recruiting program. We find Herman's criticism not based on public-

spirited concern but more narrowly focused on his own personal work and his personal displeasure with internal policies. The trial court properly granted summary judgment on Herman's First Amendment cause of action.

[2]  We next consider the Fourteenth Amendment Due Process Claims of Herman and Pressman. Both Herman and Pressman argue that their Fourteenth Amendment right to due process was violated because the defendants failed to follow the Procedures set forth in the *Code* and *Tenure Policies* manual, concerning reappointment. Neither plaintiff was a tenured employee at The University of North Carolina at Charlotte. Herman's contract explicitly provided that his position was exempt from permanent tenure consideration. Pressman's contract provided that after the expiration of his original term, he could be considered for reappointment, promotion, and/or permanent tenure.

To assert a due process claim, the plaintiffs must show that they were deprived of a protected property interest in employment. *Scagnelli v. Whiting*, 554 F. Supp. 77, 79 (M.D. N.C. 1982). If tenured, an employee has a protected property right because tenure constitutes a promise of continued employment. *Id. See Mayberry v. Dees*, 663 F. 2d 502, 513-19 (4th Cir. 1981). But a state employee has no property interest protected by due process where the employee has no specific interest in continued employment, and his employment is essentially terminable at will. *Baruah v. Young*, 536 F. Supp. 356, 364 (D. Md. 1982). Absent a protected property interest the due process claim must fail. *Id.*

The case of *Kilcoyne v. Morgan*, 664 F. 2d 940 (4th Cir. 1981), *cert. denied*, 456 U.S. 928, 72 L.Ed. 2d 444, 102 S.Ct. 1976 (1982), is illuminating on this issue. In *Kilcoyne*, the plaintiff, a nontenured East Carolina University professor, argued that his due process rights were violated because the defendants did not follow necessary procedures set forth in their tenure and policies manual. Affirming the lower court's summary judgment in favor of the defendants the Fourth Circuit stated:

> Far from disclosing a violation of his constitutional rights, [the] complaint reveals that ECU provided procedural safeguards beyond the requirements of the Fourteenth Amendment. *Because he lacked a right to further employment at ECU, his denial of tenure and further employment*

*without any procedural safeguards would have been permissible under the Fourteenth Amendment.*

*Id.* at 942. [Emphasis added.]

We find that neither Pressman nor Herman had a protected property right in continued employment. Neither was a tenured employee at the University of North Carolina at Charlotte. Both were employed under a terminable contract. Because plaintiffs lacked any right to further employment, the procedural safeguards provided by the University in this case, as in *Kilcoyne*, extend beyond the requirements of the Fourteenth Amendment and any deviation from them will not support a claim under the Fourteenth Amendment.

The trial court properly granted summary judgment for the defendants on the plaintiffs' Fourteenth Amendment causes of action.

[3]    Next, we address Pressman's claim of discrimination based on handicap. Pressman contends that he was denied employment because the Dean perceived him as handicapped by his mental condition. G.S. 168-6 provides: "Handicapped persons shall be employed in the State service, the service of the political subdivisions of the State, in the public schools, and in all other employment, both public and private, on the same terms and conditions as the ablebodied, unless it is shown that the particular disability impairs the performance of the work involved." G.S. 168-1 provides: " '[H]andicapped persons' shall include those individuals with physical, mental and visual disabilities." Thus, the central question is whether a person suffering from occasional episodes of stress, depression and mental exhaustion is a "handicapped person" as defined by Chapter 168 because he suffers from a mental disability.

In *Burgess v. Brewing Co.*, 298 N.C. 520, 259 S.E. 2d 248 (1979), the Supreme Court of North Carolina narrowly defined disability, in the context of Chapter 168, as "a present, non-correctible [*sic*] loss of function which substantially impairs a person's ability to function normally." *Id.* at 528, 259 S.E. 2d at 253. Pressman's occasional episodes of stress, depression and mental exhaustion are not "disabilities" because they are not present and non-correctable losses of function. In his deposition Pressman

stated that his mental illness had been cured and he is now able to function normally in society. We find as a matter of law, that Pressman is not a "handicapped person" within the coverage of Chapter 168. The trial court properly granted summary judgment for defendants on this cause of action.

[4] Our next issue is Pressman's breach of contract claim. Pressman asserts in his complaint that Pressman and Dean Hight arrived at a contract whereby Pressman agreed not to appeal his case any further if he received a "final review" of his case by Dean Hight. In his complaint, Pressman further states that this final review was to be similar to a final review given to another professor. There is no procedure for such a "final review" in the *Code* or *Tenure Policies* manual of the University of North Carolina at Charlotte. Our question then is whether Pressman had a contract with the Dean to receive an additional review and, if so, whether the Dean violated that contract.

An agreement to make a contract, where the terms of the contract must be subsequently fixed, does not constitute a binding obligation. *Gregory v. Perdue, Inc.*, 47 N.C. App. 655, 657, 267 S.E. 2d 584, 586 (1980). "To constitute a valid contract, the parties must assent to the same thing in the same sense, and their minds must meet as to all the terms. If any portion of the proposed terms is not settled, or no mode agreed on by which they may be settled, there is no agreement." *Id.*; *Boyce v. McMahan*, 285 N.C. 730, 208 S.E. 2d 692 (1974).

The evidentiary forecast of the facts tends to show that there may have been an agreement that Pressman would receive some type of final review; however, there was never a concrete agreement regarding a final review between the parties with definite terms capable of enforcement. While Pressman believed that his final review procedure would be similar to that of another professor, evidence of what another final review procedure constituted is an insufficient basis for providing the terms of his contract. There was no agreed on method or time for a final review. "Where one party simply believes that a contract exists, but there is no meeting of the minds, the individual seeking to enforce the obligation upon a contract theory is without a remedy." *Elliott v. Duke University*, 66 N.C. App. 590, 595, 311 S.E. 2d 632, 636, *disc. rev. denied*, 311 N.C. 754, 321 S.E. 2d 132 (1984).

We find there was no meeting of minds as to essential terms of the agreement. Plaintiff Pressman's evidence was insufficient to show a binding contract with Dean Hight because it is clear that plaintiff and defendant never reached a mutual understanding as to what constituted a final review and when such a review would be performed.

[5] Having found the trial court correctly granted summary judgment for defendants, we now consider whether it erred by denying plaintiffs' motion to amend its complaint. Under Rule 15(a) of the North Carolina Rules of Civil Procedure, leave to amend shall be freely given except where the party objecting can show material prejudice by the granting or denial of a motion to amend. *Roberts v. Memorial Park*, 281 N.C. 48, 56-57, 187 S.E. 2d 721, 725-26 (1972). A motion to amend is directed to the discretion of the trial court. *Smith v. McRary*, 306 N.C. 664, 671, 295 S.E. 2d 444, 448 (1982). The exercise of the court's discretion is not reviewable absent a clear showing of abuse. *Id.*; *see also Garage v. Holston*, 40 N.C. App. 400, 253 S.E. 2d 7 (1979).

The amendment in this case sought to add an additional cause of action one year and seven months after the original filing of the complaint and only seven days before the hearing of a motion for summary judgment. The motion was also filed nine months after extensive discovery conducted in the case was complete. The trial court found that the addition of the new cause of action would result in undue delay of the final disposition of pending claims and would result in undue prejudice to the defendants because extensive additional discovery would be required by the proposed amendment. We hold there was no abuse of discretion.

Having addressed those issues which dispose of the case on appeal, we find it unnecessary to consider plaintiffs' assignment of error relating to the trial court's severance of the actions.

Affirmed.

Judges WHICHARD and EAGLES concur.