MARGARET K. JONES, Plaintiff-Appellant v. ASHEVILLE RADIOLOGICAL GROUP, P.A., NATHAN WILLIAMS, M.D., TIMOTHY GALLAGHER, M.D., MEDICAL MUTUAL INSURANCE COMPANY OF NORTH CAROLINA; and LUCI A. LAYTON, Defendants-Appellees

No. COA97-803

(Filed 19 May 1998)

### 1. Limitations, Repose, and Laches § 22 (NCI4th)— medical malpractice claims—statute of limitations as bar

Plaintiff's medical malpractice claims filed in July 1995 against radiologists, a malpractice insurer, and a claims adjuster

based on the unauthorized release of her mammography films in June 1989 were barred by the three-year statute of limitations in N.C.G.S. § 1-15(c).

**2. Limitations, Repose, and Laches § 19 (NCI4th)— emotional distress claims—statute of limitations as bar**

Plaintiff's claims filed in July 1995 against radiologists, a malpractice insurer, and a claims adjuster for intentional infliction of emotional distress arising from the unauthorized release of her mammography films in June 1989 were barred by the three-year statute of limitations in N.C.G.S. § 1-52(5).

**3. Limitations, Repose, and Laches § 48 (NCI4th)— unfair and deceptive practice claim—statute of limitations as bar**

Plaintiff's claim filed in July 1995 against a malpractice insurer for unfair and deceptive trade practices for obtaining and reviewing plaintiff's mammography films without plaintiff's authorization in June 1989 was barred by the four-year statute of limitations in N.C.G.S. § 75-16.2.

**4. Evidence and Witnesses § 2658 (NCI4th)— mammography films—physician-patient privilege—waiver**

A patient's mammography films were protected by the physician-patient privilege, but the patient could waive this privilege either expressly or impliedly.

**5. Evidence and Witnesses § 2658 (NCI4th)— medical malpractice suit—waiver of physician-patient privilege—physician's records**

The filing of a medical malpractice suit against a physician implies a limited waiver of the physician-patient privilege to the extent that the defendant-physician may reveal the patient's confidential information contained in the defendant-physician's own records to third parties where reasonably necessary to defend against the suit.

**6. Evidence and Witnesses § 2658 (NCI4th)— waiver of physician-patient privilege—defendant's records—records in possession of third parties**

Plaintiff's medical malpractice suit against her physician based on his failure to detect her breast cancer constituted an implied waiver of her physician-patient privilege, and the defend-

ant-physician was free to disclose to third parties his own records containing plaintiff's confidential information to the extent he reasonably believed necessary to defend against plaintiff's action. Furthermore, plaintiff's filing of the medical malpractice action combined with her subsequent conduct during the course of the medical malpractice action impliedly waived her physician-patient privilege as to records related to her breast cancer which were not in defendant-physician's possession, including her mammography films prepared by and in the possession of a radiologist.

**7. Evidence and Witnesses § 2656 (NCI4th)— waiver of physician-patient privilege—necessity for discovery procedures**

Even where the patient has waived the physician-patient privilege, the defendant in a medical malpractice action must abide by formal discovery rules in obtaining medical records from a nonparty physician. This requirement protects the patient from disclosure of aspects of his or her mental and physical health which may be irrelevant or otherwise inadmissible in court and protects the medical profession against unnecessary harassment and charges of professional misconduct. N.C.G.S. § 1A-1, Rule 26.

**8. Evidence and Witnesses § 2656 (NCI4th)— physician-patient privilege—disclosure of mammograms—absence of discovery or authorization—valid claims against radiologists and witness**

Plaintiff patient asserted valid claims against radiologists and an expert witness for her physician in an underlying medical malpractice suit for violation of the physician-patient privilege based upon the radiologists' disclosure of plaintiff's mammography films to the expert witness in 1992 where plaintiff alleged that the mammography films were not disclosed pursuant to statutorily authorized discovery or plaintiff's authorization.

Judge GREENE concurring in part and dissenting in part.

Judge TIMMONS-GOODSON concurs with Judge GREEN's separate opinion.

Appeal by plaintiff from judgments entered 25 February 1997 and 3 March 1997 by Judge Forrest A. Ferrell in Buncombe County Superior Court. Heard in the Court of Appeals 17 February 1998.

*Hyler, Lopez & Walton, P.A., by George B. Hyler, Jr. and Robert J. Lopez, for plaintiff-appellant.*

*Dameron & Burgin, by Sharon L. Parker, for defendants-appellees Asheville Radiological Group, P.A. and Timothy Gallagher, M.D.*

*Kennedy, Covington, Lobdell & Hickman, L.L.P., by James P. Cooney, III and Lara E. Simmons, for defendants-appellees Nathan Williams, M.D., Medical Mutual Insurance Company and Luci A. Layton.*

WALKER, Judge.

Plaintiff is a 45-year-old woman who was diagnosed with breast cancer in 1989. Her claims in this case arose in connection with a medical malpractice action (the underlying action) she filed against her obstetrician and gynecologist (OB-GYN), Dr. Sherman Morris (Dr. Morris) for his failure to properly diagnose her breast cancer.

At the time the underlying action was filed, Dr. Morris was insured by defendant Medical Mutual Insurance Company of North Carolina (MMIC). Defendant Luci Layton (Layton) is an employee of MMIC and was assigned as a claims adjuster to investigate plaintiff's underlying claims against Dr. Morris.

During an office visit with Dr. Morris in 1987, plaintiff complained of a small, sore, firm lump in her left breast. At that time, Dr. Morris referred plaintiff to defendant Asheville Radiology Group, P.A. (Asheville Radiology) for the purpose of performing a baseline mammogram (the mammogram procedure). The mammogram procedure was performed on 9 March 1988, and Dr. Henri Kieffer prepared a report (the mammography report), which he forwarded to Dr. Morris, that interpreted the mammogram films (the films) and indicated there was "[n]o mammographic evidence of malignancy." During subsequent office visits with Dr. Morris, plaintiff was assured that the lump was only a cyst.

When the lump continued to grow and a second lump formed in her left breast, plaintiff was urged by family members to consult another physician about her condition. Thereafter, on 10 January 1989, plaintiff saw Dr. Peter Gentling (Dr. Gentling) to obtain a second opinion. Dr. Gentling performed a biopsy of plaintiff's left breast and diagnosed the lumps as breast cancer. After determining that the lumps were malignant, Dr. Gentling performed a mastectomy

of plaintiff's left breast and found four distinct carcinomas. As a result of her cancer, plaintiff underwent chemotherapy and radiation treatments.

In April of 1989, plaintiff retained an attorney, William Eubanks (Eubanks), to investigate a possible civil action against Dr. Morris for his alleged misdiagnosis of her breast cancer. Subsequently, Eubanks sent a letter to Dr. Morris advising him of the possibility of a suit, which Dr. Morris forwarded to his medical malpractice insurance carrier, MMIC. Thereafter, MMIC's claims adjuster, Layton, set up a claims file and requested plaintiff's medical records from Dr. Morris. After reviewing the medical records, which included the mammography report, Layton decided to have the films reviewed by an independent radiologist in order to insure that they had been interpreted correctly. Layton obtained the films from Asheville Radiology on 18 May 1989.

As a result of her displeasure with Dr. Morris' treatment, plaintiff switched to a new OB-GYN physician, Dr. Evelyn Lyles (Dr. Lyles). At Dr. Lyles' request, plaintiff went to Asheville Radiology in June of 1989 to obtain the films. However, when she arrived she was informed that they had been checked out by Layton. Plaintiff immediately contacted Eubanks, who explained that Layton was associated with MMIC but should not have checked out the films without plaintiff's consent. Eubanks assured plaintiff that he would "take care of it."

On 10 July 1990, Eubanks sent a settlement brochure to Layton, with a copy to plaintiff, in which he alleged that Dr. Morris' negligence caused damage to plaintiff in the form of "medical expenses, lost earnings, reconstructive surgery, loss of enjoyment of life for [plaintiff], pain and suffering and loss of consortium for [plaintiff's husband]."

Plaintiff filed the underlying action against Dr. Morris on 14 November 1990, alleging that as a result of Dr. Morris' negligence, the proper diagnosis and treatment of her cancer was substantially delayed, which reduced her chance of survival and resulted in permanent physical, emotional and economic injury. The complaint made specific references to the mammogram procedure ordered by Dr. Morris and performed by Asheville Radiology on 9 March 1988.

In December of 1990, MMIC retained James W. Williams (Attorney Williams) to represent Dr. Morris in the underlying action.

On 27 December 1990, Attorney Williams served plaintiff with a discovery request for certain documents including, among other things, the medical records for all care and treatment received by plaintiff during the five-year period immediately preceding the institution of the underlying action. In response, plaintiff forwarded a copy of her medical records, which included a copy of the mammography report. Further, prior to her husband's deposition on 16 July 1992, plaintiff agreed to release a copy of her films to Dr. Morris.

On 10 January 1991, Attorney Williams questioned plaintiff at her deposition regarding Dr. Morris having ordered the mammogram procedure; the condition of her breast at the time of the mammogram procedure; the questionnaire she completed at Asheville Radiology prior to the mammogram procedure; and the mammography report itself.

On 14 June 1991, with plaintiff present, Dr. Morris was deposed by plaintiff's counsel regarding the mammogram procedure and the mammography report that interpreted the films.

Thereafter, Dr. Nathan Williams (Dr. Williams), an expert in breast disease, was retained by defendant to offer an opinion as to the standard of care practiced by Dr. Morris. Dr. Williams was provided with a complete copy of plaintiff's medical history. On 1 July 1992, with plaintiff present, Dr. Williams was deposed by plaintiff's attorney regarding his opinion as to Dr. Morris' treatment of plaintiff based on his review of her medical records, including the mammography report.

After his deposition in the underlying action, but before that trial, Dr. Williams determined that in addition to reviewing the mammography report, he needed to review the films in order to be prepared to testify at trial. On 16 July 1992, Dr. Williams obtained the films from Memorial Mission Hospital (the Hospital) and briefly reviewed them before returning them to the Hospital's radiology department. It is unclear from the record how the films were initially transferred from Asheville Radiology to the Hospital.

Thereafter, pursuant to a previous agreement with Dr. Morris to provide him with a copy of her films, plaintiff called Asheville Radiology to arrange picking up the films so that she could take them to her husband's deposition later that day. At that time, plaintiff was advised that Dr. Timothy Gallagher (Dr. Gallagher), a physician employed by Asheville Radiology, had checked the films out to Dr.

Williams. Plaintiff advised Asheville Radiology that Dr. Williams was not her treating physician and the films should not have been released to him. Asheville Radiology then retrieved the films from Dr. Williams.

On 25 August 1992, plaintiff discharged Eubanks and retained her present attorney. At trial, plaintiff, Dr. Morris and Dr. Williams all testified in detail about the circumstances surrounding Dr. Morris' alleged failure to properly diagnose plaintiff's breast cancer, including the mammogram procedure which was performed by Asheville Radiology in March of 1988. Plaintiff did not object to any testimony regarding the mammogram procedure and in fact introduced the mammography report as part of her exhibits. The jury returned a verdict in favor of Dr. Morris in the underlying action, and plaintiff appealed to this Court, which found no error.

On 17 July 1995, plaintiff filed this action, in which she alleged claims of medical malpractice and breach of fiduciary duty/confidentiality against Asheville Radiology and Dr. Gallagher; breach of implied contract against Asheville Radiology; unfair and deceptive trade practices against MMIC; and invasion of privacy, intentional infliction of emotional distress (emotional distress) and punitive damages against all defendants. Following a hearing, the trial court granted defendants' motions for summary judgment as to all claims.

In her appeal, plaintiff contends the trial court erred by granting defendants' motions for summary judgment for two principal reasons: (1) her claims against Asheville Radiology, MMIC and Layton based on the unauthorized release of the films in 1989 were not barred by the applicable statutes of limitation; and (2) a genuine issue of material fact existed as to whether plaintiff waived the physician-patient privilege with regards to Asheville Radiology and Dr. Gallagher's unauthorized release of the films to Dr. Williams on 16 July 1992.

At the outset, we first note that summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (1990); *Pressman v. UNC-Charlotte*, 78 N.C. App. 296, 300, 337 S.E.2d 644, 647 (1985), *disc. review allowed*, 315 N.C. 589, 341 S.E.2d 28 (1986). In reviewing a trial court's granting of summary judgment, we must view the evidence in the light most favorable to the party

opposing summary judgment. *Pembee Mfg. Corp. v. Cape Fear Constr. Co.*, 69 N.C. App. 505, 507, 317 S.E.2d 41, 42 (1984), *aff'd*, 313 N.C. 488, 329 S.E.2d 350 (1985). Further, "[a] defending party is entitled to summary judgment if he can show that the claimant cannot prove the existence of an essential element of [her] claim or cannot surmount an affirmative defense which would bar the claim." *Little v. National Service Industries*, Inc., 79 N.C. App. 688, 690, 340 S.E.2d 510, 512 (1986); *see also Ballinger v. Secretary of Revenue*, 59 N.C. App. 508, 296 S.E.2d 836 (1982), *cert. denied*, 307 N.C. 576, 299 S.E.2d 645 (1983) (where this Court held that "[w]hen defendants establish a complete defense to plaintiff's claim, they are entitled to the quick and final disposition of that claim which summary judgment provides." *Id.* at 512, 296 S.E.2d at 839).

I.

**[1]** As to plaintiff's first assignment of error, when a defendant properly pleads the statute of limitations as a defense, the burden shifts to the plaintiff to show that he or she instituted the action within the prescribed time period. *Pembee Mfg. Corp. v. Cape Fear Constr. Co.*, 69 N.C. App. at 507, 317 S.E.2d at 42. Further, when the facts are not in conflict, a question of law exists for which summary judgment may be appropriate. *Id.* at 508, 317 S.E.2d at 43. Here, since plaintiff has asserted multiple claims which are governed by different statutes of limitation, we will address each claim separately.

This Court has held that in the context of a health care provider's unauthorized disclosure of a patient's confidences, claims of medical malpractice, invasion of privacy, breach of implied contract and breach of fiduciary duty/confidentiality should all be treated as claims for medical malpractice. *Watts v. Cumberland County Hosp. System*, 75 N.C. App. 1, 9, 330 S.E.2d 242, 248-249, *disc. review denied*, 314 N.C. 548, 335 S.E.2d 27 (1985), *rev'd on other grounds*, 317 N.C. 321, 345 S.E.2d 201 (1986). As such, N.C. Gen. Stat. § 1-15(c) provides for a three-year statute of limitations period and further states in pertinent part that:

[A] cause of action for malpractice arising out of the performance of or failure to perform professional services shall be deemed to accrue at the time of the occurrence of the last act of the defendant giving rise to the cause of action. . . .

N.C. Gen. Stat. § 1-15(c) (1996).

JONES v. ASHEVILLE RADIOLOGICAL GROUP

[129 N.C. App. 449 (1998)]

In this case, it is uncontroverted that the last act giving rise to plaintiff's cause of action against Asheville Radiology, MMIC and Layton occurred in June of 1989 when plaintiff was notified that Layton had obtained plaintiff's films from Asheville Radiology. Therefore, since plaintiff filed her claim for medical malpractice more than three years after June of 1989, the trial court did not err by granting summary judgment for MMIC and Layton, as well as in favor of Asheville Radiology for its release of the films in June of 1989.

[2] Similarly, "[b]ecause it is not specifically denominated under any limitation statute, a cause of action for emotional distress falls under the general three-year provision of G.S. 1-52(5)." *King v. Cape Fear Mem. Hosp.*, 96 N.C. App. 338, 341, 385 S.E.2d 812, 814 (1989), *disc. review denied*, 326 N.C. 265, 389 S.E.2d 114 (1990); *see also* N.C. Gen. Stat. § 1-52(5) (1996). As such, the trial court did not err in granting summary judgment for Asheville Radiology, MMIC and Layton on plaintiff's claim for emotional distress since it was not brought within the three-year limitations period which began running in June of 1989.

[3] Finally, a claim for unfair and deceptive trade practices pursuant to Chapter 75 of the North Carolina General Statutes is subject to a four-year statute of limitations. *Hinson v. United Financial Services*, 123 N.C. App. 469, 474, 473 S.E.2d 382, 386, *disc. review denied*, 344 N.C. 630, 477 S.E.2d 39 (1996); *see also* N.C. Gen. Stat. § 75-16.2 (1994). Further, "a cause of action pursuant to § 75-16 accrues when the violation occurs." *Id.* at 475, 473 S.E.2d at 387. Here, plaintiff's complaint alleges that MMIC "engaged in unfair or deceptive practices affecting commerce . . . by knowingly requesting, obtaining the release of, and reviewing the Plaintiff's confidential [films] without her authorization or consent." As previously stated, this cause of action accrued in June of 1989 when plaintiff became aware that Layton requested and received a copy of plaintiff's films. Therefore, the trial court did not err by granting MMIC's motion for summary judgment since plaintiff's claim for unfair and deceptive trade practices was not filed within the four-year statutorily prescribed period.

II.

In her next assignment of error, plaintiff contends the trial court erred by granting summary judgment in favor of Asheville Radiology, Dr. Gallagher and Dr. Williams. Plaintiff's claims against these

defendants are based on Dr. Gallagher's unauthorized release of the films on 16 July 1992 to Dr. Williams for his review. Plaintiff avers that this unauthorized release violated the physician-patient privilege conferred by N.C. Gen. Stat. § 8-53.

That statute provides, in pertinent part:

No person, duly authorized to practice physic or surgery, shall be required to disclose any information which he may have acquired in attending a patient in a professional character, and which information was necessary to enable him to prescribe for such patient as a physician, or to do any act for him as a surgeon, and no such information shall be considered public records under G.S. 132-1. Confidential information obtained in medical records shall be furnished only on the authorization of the patient, or if deceased, the executor, administrator, or, in the case of unadministered estates, the next of kin. . . .

N.C. Gen. Stat. § 8-53 (1986). Here, since Dr. Morris ordered the mammogram procedure in the course of his treatment of plaintiff, and Asheville Radiology performed this professional service in furtherance of plaintiff's care, the mammography report and the films are covered by the privilege. Thus, they may not be released unless the plaintiff either authorizes such release or waives the privilege.

The nature of the physician-patient relationship is the cornerstone of the privilege's existence. The underlying purpose of the privilege is to encourage free communication and disclosure between patient and physician in order to facilitate the proper diagnosis and treatment of the patient's ailment. *Cates v. Wilson*, 321 N.C. 1, 14-15, 361 S.E.2d 734, 742 (1987). It has been argued that the denial of the privilege would result in the patient withholding information vital to the proper treatment of her ailment for fear of publicly exposing facts of an embarrassing or confidential nature. *See Collins v. Bair*, 268 N.E.2d 95, 98 (Ind. 1971).

However, no such privilege existed at common law; therefore, the statutory privilege is to be strictly construed. *Sims v. Insurance Co.*, 257 N.C. 32, 36-37, 125 S.E.2d 326, 329-330 (1962). The patient has the burden of establishing the existence of the privilege and objecting to the discovery of such privileged information in the first instance. *Adams v. Lovette*, 105 N.C. App. 23, 28, 411 S.E.2d 620, 624, *aff'd*, 332 N.C. 659, 422 S.E.2d 575 (1992). Further, this privilege is not absolute and may be waived by the patient's conduct. *Id.* at 28-29, 411 S.E.2d

at 624; *see also Cates v. Wilson*, 321 N.C. at 14, 361 S.E.2d at 742. In addressing the issue of waiver, our Supreme Court has held:

> When . . . the patient breaks the fiduciary relationship with the physician by revealing, or permitting revelation of, the substance of the information transmitted to the physician, the patient has, in effect, determined it is no longer important that the confidences which the privilege protects continue to be protected. Having taken this position, the plaintiff may not silence the physician as to matters otherwise protected by the privilege.

*Cates v. Wilson*, 321 N.C. at 15, 361 S.E.2d at 742-743.

Having determined that a patient may waive the physician-patient privilege by "break[ing] the fiduciary relationship with the physician by revealing, or permitting revelation of, the substance of the information transmitted to the physician," it must now be determined when a patient effectively waives the privilege, and the extent to which the privilege is waived. *Id.*; *see also Collins v. Bair*, 268 N.E.2d at 99.

In *Cates v. Wilson, supra*, our Supreme Court announced that the facts and circumstances of a particular case determine whether a patient's conduct constitutes a waiver of the privilege. *Id.* at 14, 361 S.E.2d at 742; *see also Crist v. Moffatt*, 326 N.C. 326, 331, 389 S.E.2d 41, 44 (1990). The Court then elaborated on the general rule by stating that a waiver of the privilege may occur either when: (1) a plaintiff calls the treating physician as a witness and examines him as to her physical condition; (2) a plaintiff fails to object when the opposing party calls the treating physician to testify; or (3) a plaintiff testifies to the communication between her and the physician. *Id.* at 14, 361 S.E.2d at 742. Further, the Court observed that the privilege could also be waived when the patient "voluntarily goes into detail regarding the nature of [her] injuries and either testifies to what the physician did or said while in attendance." *Id.* (Citation omitted).

In his concurring opinion in *Cates*, Justice (now Chief Justice) Mitchell stated it was time for the Court to recognize an exception to the physician-patient privilege which has already been adopted by the majority of jurisdictions, the patient-litigant exception. *Id.* at 17, 361 S.E.2d at 744 (Mitchell, J., concurring). That exception recognizes that when a patient files a medical malpractice action against her treating physician in which an essential part of the claim is the existence of a physical ailment, there should be a waiver of the privilege

for all communications causally or historically related to that ailment. *Id.* However, the Court concluded that a waiver had occurred under the facts and circumstances of the case and therefore declined to adopt this exception.

Here, when plaintiff filed the underlying action, she directly put her medical condition at the time of the mammogram procedure at issue. Thereafter, plaintiff's conduct during the course of the underlying action clearly establishes a waiver of her physician-patient privilege. During discovery, plaintiff agreed to provide Dr. Morris with copies of her medical records pertaining to her treatment for breast cancer, including the mammography report and the films, which are an integral part of the mammography report; plaintiff testified in detail during her deposition about the circumstances surrounding the mammogram procedure; plaintiff deposed Dr. Morris in detail about the mammogram procedure and the mammography report; and plaintiff was present when Dr. Williams was examined during his deposition about Dr. Morris' treatment of plaintiff based on Dr. Williams' review of the medical records, including the mammography report. Thereafter, during the trial of the underlying action, plaintiff testified as she did in her deposition regarding her medical records and the mammogram procedure, and plaintiff did not object to the testimonies of Dr. Morris and Dr. Williams regarding plaintiff's medical records and the mammogram procedure. All of these facts and circumstances lead to the conclusion that plaintiff never manifested a desire to preserve her physician-patient privilege and thus has waived such privilege as to Dr. Morris.

However, even when a plaintiff waives the physician-patient privilege, "the question remains by what procedures and subject to what controls the exchange of information shall proceed." *Crist v. Moffatt,* 326 N.C. at 334, 389 S.E.2d at 46. Here, plaintiff contends that while she "should not be able to hide behind the privilege and use it as a sword," there should be some control over the discovery process.

As our Supreme Court has recognized, even when a plaintiff waives the privilege, defendants must still utilize the formal discovery methods provided by the North Carolina Rules of Civil Procedure unless the parties consent to an informal discovery method. *Id.* at 336, 389 S.E.2d at 47. By requiring defendants to proceed under the formal discovery rules, defendants are able to reach all relevant information while the plaintiff's privacy interest is protected by ensuring supervision of the discovery process. *Id.* at 334, 389 S.E.2d at 46.

Here, Dr. Morris ordered the mammogram procedure in connection with his evaluation and treatment of plaintiff. When plaintiff brought the underlying action against Dr. Morris for his alleged failure to properly diagnose her breast cancer, she directly put at issue her condition, thus allowing Dr. Morris to obtain any of her medical records that are relevant to her claim during the discovery process. Thereafter, when plaintiff provided Dr. Morris with copies of her medical records during discovery, and likewise agreed to provide him with her films in connection with her husband's deposition on 16 July 1992, no further discovery was necessary in order for Dr. Morris to permit Dr. Williams, his expert witness, to review these medical records and films. Therefore, I find that the waiver of the privilege as to Dr. Morris precludes any claims against Asheville Radiology, Dr. Gallagher and Dr. Williams.

We have reviewed plaintiff's remaining assignments of error and find them to be without merit.

Issue I—Affirmed.

Issue II—Reversed and remanded.[1]

Judge GREENE concurs in part and dissents in part with a separate opinion.

Judge TIMMONS-GOODSON concurs with Judge Greene's separate opinion.

Judge GREENE concurring in part and dissenting in part.

I agree with Judge Walker that plaintiff's claims based on the 1989 disclosure of her medical records are barred by the statute of limitations. I do not agree, however, that summary judgment for defendants was proper with respect to claims based on the 1992 disclosure of plaintiff's mammography films.

[4] This Court has recognized a claim of medical malpractice based on the unauthorized disclosure of confidential information, *Watts v. Cumberland County Hosp. System*, 75 N.C. App. 1, 9, 330 S.E.2d 242, 249 (1985), *rev'd in part on other grounds*, 317 N.C. 321, 345 S.E.2d

---

1. Because Judge Timmons-Goodson joins Judge Greene's separate opinion, that opinion represents the majority opinion on Issue II with Judge Walker's opinion on Issue II representing the dissent.

201 (1986), the basis of plaintiff's claims in this action. *See* N.C.G.S. § 8-53 (1986) ("Confidential information obtained in medical records shall be furnished only on the authorization of the patient . . . ."). I agree with Judge Walker that plaintiff's mammography films are protected by the physician-patient privilege, and that a patient may waive this privilege either expressly or impliedly. I disagree, however, that plaintiff's filing of a medical malpractice action against Dr. Sherman Morris (Dr. Morris), combined with plaintiff's subsequent "conduct during the course of the [medical malpractice] action," allowed Asheville Radiological Group, P.A. (Asheville Radiological) and Dr. Timothy Gallagher (Dr. Gallagher), neither of whom were parties to plaintiff's medical malpractice action, to disclose plaintiff's mammography films to Dr. Nathan Williams (Dr. Williams), who was testifying as an expert witness for Dr. Morris.

**[5]** The filing of a medical malpractice suit against a physician implies a limited waiver of the physician-patient privilege to the extent that the defendant-physician may reveal the patient's confidential information *contained in the defendant-physician's own records* to third parties where reasonably necessary to defend against the suit. *See, e.g., Acosta v. Richter*, 671 So. 2d 149, 156 (Fla. 1996) ("[A] defendant-physician is free . . . to discuss his knowledge of the patient in order to properly defend himself."); *Heller v. Norcal Mut. Ins. Co.*, 876 P.2d 999, 1003 (Cal.) (construing statutory physician-patient privilege to allow a doctor who is "a potential litigant in a malpractice action . . . to discuss with [his insurance provider] plaintiff's medical condition"), *cert. denied*, 513 U.S. 1059, 130 L. Ed. 2d 602 (1994); *Mutter v. Wood*, 744 S.W.2d 600, 601 (Tex. 1988) (waiving privilege completely as to records of defendant-doctors); *Otto v. Miami Valley Hosp. Soc'y*, 266 N.E.2d 270, 272 (Ohio 1971) ("[I]n an action against a physician for malpractice the doctor may disclose communications."); *cf.* N.C.R. Professional Conduct 1.6(d)(6) (permitting lawyers to disclose a client's confidential information "to the extent the lawyer reasonably believes necessary to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client; . . . or to respond to allegations in any proceeding concerning the lawyer's representation of the client").

**[6]** In this case, plaintiff's medical malpractice suit against Dr. Morris constituted an implied waiver of her physician-patient privilege. Dr. Morris, as a defendant-physician in that suit, was therefore free to disclose to third parties *his own records* containing plaintiff's confidential information, to the extent he reasonably believed necessary in

defending against plaintiff's action. In addition, I agree with Judge Walker that plaintiff's filing of the underlying medical malpractice action against Dr. Morris *combined with* her subsequent conduct during the course of the medical malpractice action impliedly waived her physician-patient privilege as to records related to plaintiff's breast cancer which were *not* in Dr. Morris's possession. It is the effect of plaintiff's waiver as to these records (*i.e.*, plaintiff's mammography films prepared by and in the possession of Asheville Radiological), which is at issue in this case.

[7] The confidential nature of the physician-patient relationship extends beyond the time of the waiver by the patient, *Crist v. Moffatt*, 326 N.C. 326, 334, 389 S.E.2d 41, 46 (1990), and a defendant "must utilize the statutorily recognized methods of discovery enumerated in N.C.G.S. § 1A-1, Rule 26" to obtain a plaintiff's medical information, *id.* at 336, 389 S.E.2d at 47; *see also* N.C.G.S. ch. 1A, art. 5 (1990). Requiring defendants to abide by formal discovery rules in obtaining medical records from a non-party physician, even where the patient has waived the physician-patient privilege, protects the patient from disclosure of aspects of her mental and physical health which may be irrelevant or otherwise inadmissible in court. *Wenninger v. Muesing*, 240 N.W.2d 333, 336-37 (Minn. 1976). It also protects the medical profession against unnecessary harassment and charges of professional misconduct. *See Crist*, 326 N.C. at 335, 389 S.E.2d at 47.

[8] In this case, Asheville Radiological and Dr. Gallagher, neither of whom were defendants in the medical malpractice action, disclosed plaintiff's mammography films to Dr. Williams. Although the films were related to plaintiff's malpractice action, the films were not in the possession of a defendant to that action. It follows that, even after plaintiff's waiver, the films could only be disclosed pursuant to statutorily authorized discovery procedures or plaintiff's authorization. Plaintiff asserts that she did not authorize Asheville Radiological or Dr. Gallagher to release her films to Dr. Williams, nor did Dr. Williams obtain the films pursuant to discovery. We may assume, for the sake of argument, that once Dr. Morris had legal possession of plaintiff's mammography films (either pursuant to court-ordered discovery, plaintiff's delivery of the films to Dr. Morris, or plaintiff's authorization to Asheville Radiological to release the films to him), Dr. Morris could then have provided Dr. Williams with the films as a reasonably necessary step in defending against plaintiff's lawsuit; however, this intermediate step was not taken. Plaintiff has

therefore asserted valid claims against Asheville Radiological, Dr. Gallagher, and Dr. Williams for the disclosure of her mammography films in 1992. Accordingly, I would reverse the entry of summary judgment on these claims.