**Martin Joseph KILCOYNE, Appellant,**

v.

**Robert MORGAN, Chairman, Board of Trustees, East Carolina University, etc., et al., Appellees.**

**No. 81–1069.**

United States Court of Appeals, Fourth Circuit.

Argued June 3, 1981.

Decided Nov. 27, 1981.

Thomas F. Loflin, III, Durham, N. C. (Loflin & Loflin, Durham, N. C., on brief), for appellant.

Elizabeth C. Bunting, Asst. Atty. Gen., Raleigh, N. C. (Rufus L. Edmisten, Atty. Gen., Edwin M. Speas, Jr., Sp. Deputy Atty. Gen., Raleigh, N. C., on brief), for appellees.

Before BRYAN, Senior Circuit Judge, SPROUSE and ERVIN, Circuit Judges.

PER CURIAM:

The extent of the Fourteenth Amendment's role in faculty tenure and promotion procedures at State colleges and universities is questioned by this appeal. The facts of the immediate controversy follow.

## I

During the academic years from July 1969 to May 1973, appellant Martin Joseph Kilcoyne was a non-tenured member of the faculty of East Carolina University (ECU), a member institution of the greater University of North Carolina. As stipulated by the parties, his employment contract with ECU incorporated the following provision of the Faculty Manual: "The Department Chairman will inform the non-tenured faculty member of his progress toward tenure both by personal conference and written resume." These University guidelines required a tenure decision on professors of Kilcoyne's rank following three probationary years of teaching at ECU.

Late in each of his first two academic years at ECU, Professor Kilcoyne received a letter from his department chairman.[1] Both letters followed a common format. They began with an explanation that the letter was required by the University regulation just quoted. Next the chairman thanked Kilcoyne for his contributions to the University. The third paragraph of each letter stressed the need for him to publish his scholarly works. Both letters concluded with a request for a personal conference with Kilcoyne in the department

chairman's office. Such a conference was held each year.

On September 20, 1971, the beginning of his third year, Kilcoyne was notified that he would be rehired for a fourth academic year. Before this third and final probationary year was completed, however, he was informed that he would not be granted tenure nor given employment beyond the fourth year. These communications from ECU prompted Kilcoyne's Section 1983[2] and pendent State claims, the subject of this litigation.

## II

Kilcoyne's complaint, filed April 4, 1973 in the United States District Court for the Eastern District of North Carolina against the defendants, alleges that ECU had granted him "*de facto* tenure" by hiring him for an additional year beyond the three-year probationary period for non-tenured faculty, and thus had violated his rights by discharging him without a hearing. The Court granted summary judgment against him on this point, *Kilcoyne v. Morgan*, 405 F.Supp. 828 (E.D.N.C.1975); we affirmed, *Kilcoyne v. Morgan*, 530 F.2d 968 (CA4 1975). The cause, however, was remanded for the trial court's reconsideration of the procedural due process issues addressed in this opinion. *Kilcoyne v. Morgan*, No. 75–1372 (CA4 March 3, 1976) (unreported supplemental opinion).

On remand, Kilcoyne now maintains that the procedures followed by ECU did not conform precisely to those in the Faculty Manual, and that this asserted deviation constitutes an actionable denial of due process by the State. The District Judge referred the cause to a Magistrate to determine "whether the conduct of the defendants amounted to a denial of procedural due process."

---

1. These letters were dated April 21, 1970 and May 22, 1971.

2. 42 U.S.C. § 1983 provides:
   Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United

States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

The Magistrate's Memorandum and Recommendation, filed January 10, 1980, concluded that Kilcoyne could not maintain a claim predicated on a denial of procedural due process. The District Court adopted the Magistrate's report in whole and, on January 29, 1980, again granted summary judgment against Kilcoyne. Subsequently, his pendent State claims against ECU for breach of contract also were referred to the Magistrate with similar results. On October 31, 1980, the District Court adopted the Magistrate's report and dismissed the pendent claims as well. Kilcoyne appeals these two rulings; we affirm.

### III

Invocation of the Fourteenth Amendment's due process guarantees required Kilcoyne to show that the State had deprived him of a protected liberty or property[3] interest. *Board of Regents v. Roth,* 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). Failing to satisfy this prerequisite by establishing his claim to "de facto tenure," *Kilcoyne v. Morgan,* 530 F.2d 968 (CA4 1975), he now argues that the impermissible deprivation supporting his Fourteenth Amendment claim is ECU's failure to follow the procedures for making tenure decisions required under his contract through incorporation of the Faculty Manual. More explicitly, he complains the procedures that ECU employed failed to comport exactly with these contractual requirements.

Far from disclosing a violation of his constitutional rights, Kilcoyne's complaint reveals that ECU provided procedural safeguards beyond the requirements of the Fourteenth Amendment. Because he lacked a right to further employment at ECU, his denial of tenure and further employment without *any* procedural safeguards would have been permissible under the Fourteenth Amendment. *See Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

Had ECU *gratuitously* afforded tenure aspirants procedural safeguards not constitutionally mandated, deviations from those procedures would not support a claim under the Fourteenth Amendment and Section 1983. *See, e. g., Clark v. Whiting,* 607 F.2d 634, 642 (CA4 1979); *Jeffries v. Turkey Run Consolidated School District,* 492 F.2d 1, 3 (CA7 1974). Kilcoyne maintains however, that ECU did not gratuitously provide procedural safeguards to non-tenured faculty; he argues instead that these procedures, admittedly exceeding the procedural due process requirements of the Fourteenth Amendment, were prescribed by the terms of his employment contract.

For Fourteenth Amendment purposes, Kilcoyne's contractual claim for additional procedural safeguards does not distinguish his case from those where the procedures were provided gratuitously. The contract may provide a basis for recovery under a breach of promise theory, but that issue is not elevated to a constitutional question solely because the State is a party to the contract. As we have admonished repeatedly "[e]very disagreement between a public employee with his employer over . . . the terms of his contract does not reach constitutional proportions." *Sigmon v. Poe,* 564 F.2d 1093, 1096 (CA4 1977); accord, *Heath v. City of Fairfax,* 542 F.2d 1236, 1238 (CA4 1976).

### IV

Kilcoyne's pendent State law claims pressed a cause of action for breach of contract. The District Court granted defendants' motion to dismiss these claims on the grounds that they were barred by the doctrine of sovereign immunity. The Supreme Court of North Carolina abrogated the doctrine of sovereign immunity in that State effective March 2, 1976. *Smith v. State,* 289 N.C. 303, 222 S.E.2d 412 (1976). As Kilcoyne's claim accrued prior to March 2, 1976, the dispositive question is whether the abrogation was to apply retroactively.

In *MacDonald v. University of North Carolina,* 299 N.C. 457, 263 S.E.2d 578

---

**3.** Kilcoyne raises only colorable claims of deprivation of property interests.

(1980), the North Carolina high court unequivocally announced that the rule in *Smith v. State* would not apply retroactively; all claims accruing prior to March 2, 1976 remained barred by the State's sovereign immunity. As *MacDonald* involved a suit against a constituent institution of the greater University of North Carolina, we find it wholly dispositive of the instant case. Kilcoyne's arguments to the contrary are meritless.

The judgments below are

AFFIRMED.