DR. MATTHEW F. WARE, Plaintiff-Appellant v. CHANCELLOR EDWARD B. FORT, in his personal and official capacity as Chancellor of the North Carolina A & T State University; DR. A. JAMES HICKS, in his personal and official capacity as the Dean of the College of Arts and Sciences at North Carolina A & T, and the NORTH CAROLINA A & T STATE UNIVERSITY, Defendant-Appellees

No. COA95-1349

(Filed 3 December 1996)

**Constitutional Law § 85 (NCI4th)— college professor—not reappointed—§ 1983 action—no property right**

The trial court did not err by granting defendant's motion to dismiss under N.C.G.S. § 1A-1, Rule 12(b)(6) where plaintiff filed an action under 42 U.S.C. § 1983 arising from defendant-university's failure to reappoint him to the faculty. The essence of plaintiff's argument is that the meandering grievance procedure employed by the university administration, combined with the underlying malicious non-reappointment decision, deprived him of a property right in his probationary employment without adequate due process of law, but plaintiff simply had no property right in the position under either the North Carolina or federal constitutions.

**Am Jur 2d, Constitutional Law § 584.**

Appeal by plaintiff from summary judgment entered 29 September 1995 by Judge Thomas W. Ross, in Guilford County Superior Court. Heard in the Court of Appeals 10 September 1996.

*McSurely, Dorosin & Osment, by Alan McSurely, Mark Dorosin and Ashley Osment, for plaintiff appellant.*

*Attorney General Michael F. Easley, by Special Deputy Attorney General Thomas J. Ziko, for the State.*

SMITH, Judge.

Plaintiff is a university professor whose employment contract ended and who was not thereafter reappointed to the faculty by his university-employer. Plaintiff claims the circumstances surrounding his nonreappointment constituted a violation of 42 U.S.C. § 1983 and various provisions of the North Carolina Constitution. The trial court disagreed and dismissed this case on defendants' motion. We affirm.

The facts in this case are as follows. Plaintiff was a tenure-track, probationary professor in the physics department at North Carolina A & T University (University). On 20 April 1992, plaintiff was notified by Dr. Sekazi Mtingwa, Chairman of the University physics department, that plaintiff would not be reappointed to his position. Plaintiff's employment contract expired 14 May 1993. In May 1992, plaintiff appealed Mtingwa's nonreappointment decision through the University's grievance procedure as having been based on personal malice.

The first step in the appeals process was to the Dean of the College of Arts and Sciences, defendant Arthur James Hicks (Dean Hicks). Dean Hicks, however, did not respond to plaintiff's appeal in a fashion plaintiff deemed timely. So, in August 1992, plaintiff appealed his case to the University's Vice-Chancellor for Academic Affairs, Dr. Edward J. Hayes (Dr. Hayes). Dr. Hayes' involvement apparently prompted Dean Hicks to move forward with a decision on plaintiff's case. After a meeting with plaintiff in September 1992, Dean Hicks formally rejected plaintiff's appeal. Dr. Hayes urged Dean Hicks to reconsider his decision, and upon that reconsideration, Dean Hicks rejected plaintiff's appeal once again in January 1993.

Dean Hick's second rejection of plaintiff's grievance was then appealed to the Faculty Committee. On 3 May 1993, the Faculty Committee found that plaintiff's nonreappointment was "flawed," and recommended a contract renewal. Despite the Faculty Committee's recommendation, plaintiff's grievance was again rejected by Dean Hicks. At this point, the entire matter was sent to University Chancellor Edward B. Fort (Chancellor Fort) for his review. Chancellor Fort declined review of the grievance and remanded the matter to the Faculty Committee.

At the second hearing of the Faculty Committee on 21 June 1993, the Committee found evidence of personal malice in Dr. Mtingwa's decision not to reappoint plaintiff, and found that Dean Hick's dilatory response(s) had deprived plaintiff of "due process." Again, the Faculty Committee's decision was considered by Dean Hicks, and once again, the grievance was rejected. This rejection by Dean Hicks was affirmed by Chancellor Fort in August 1993, after review of the record compiled by the Faculty Committee.

Plaintiff then appealed Chancellor Fort's decision to the University Board of Trustees (the A & T Board). After more procedural meandering, the A & T Board took up the matter on 19 July

1994, and decided in plaintiff's favor. The A & T Board found that Dr. Mtingwa's decision "not to renew Dr. Ware's contract and not to promote him was based on personal malice." As a remedy, the A & T Board ordered reinstatement of plaintiff, back pay, and removal of Dr. Mtingwa from future evaluations of plaintiff's job performance.

Plaintiff appealed this decision to the University of North Carolina Board of Governors (BOG), asserting that the remedy afforded him by the A & T Board was inadequate because it did not provide for his attorney's fees and other attendant consequential damages. The BOG's Committee on Personnel and Tenure, in November 1994, affirmed the substance of plaintiff's grievance on the merits, but declined to award damages beyond those awarded by the A & T Board. In so ruling, the BOG distinguished the damages it was willing to award an aggrieved party through its administrative grievance policy from the full range of damages available in a court of law. "Such [consequential] damages," the BOG concluded, "should best be determined by and awarded in a court of law."

Plaintiff then brought the instant action alleging state and federal constitutional claims; the foundation of these claims being the initial malicious decision of Dr. Mtingwa and the ensuing bureaucratic procedure described above. Defendants moved to dismiss the instant case pursuant to N.C.R. Civ. P. 12(b)(6), 12(b)(1) and 12(b)(2). The trial court granted defendants' motion and dismissed all claims.

We begin by discussing the posture of this case, and the standard of review. To affirm dismissal of an action on the basis of a Rule 12(b)(6) motion, the complaint must fail to state any set of facts which would entitle plaintiff to relief. *Ladd v. Estate of Kellenberger*, 314 N.C. 477, 481, 334 S.E.2d 751, 755 (1985). In considering the sufficiency of the complaint under Rule 12(b)(6), a court must accept as true the facts alleged therein. *Smith v. Ford Motor Co.*, 289 N.C. 71, 80, 221 S.E.2d 282, 288 (1976).

Plaintiff's claims are twofold. The first is based on 42 U.S.C. § 1983, which allows a private right of action for damages and injunctive relief against individuals and governmental bodies whose conduct under color of state or local law deprives a plaintiff of rights, privileges or immunities "secured by the Constitution and laws." 42 U.S.C. § 1983; *Corum v. University of North Carolina*, 330 N.C. 761, 770, 413 S.E.2d 276, 282, *reh'g denied*, 331 N.C. 558, 418 S.E.2d 664, *cert. denied sub. nom.*, *Durham v. Corum*, 506 U.S. 985,

121 L. Ed. 2d 431 (1992).[1] To state a claim under 42 U.S.C. § 1983, plaintiff must allege facts demonstrating that some right secured by the federal constitution or federal law has been abridged. *Id.* Absent such allegations, a claim under § 1983 will not lie. *Id.*

Similarly, and somewhat obviously, there can be no state constitutional claim against governmental defendants absent a violation of plaintiff's rights under some provision of the North Carolina Constitution. *Hawkins v. North Carolina*, 117 N.C. App. 615, 630, 453 S.E.2d 233, 242 (1995); *Corum*, 330 N.C. at 789, 413 S.E.2d at 293. Direct claims for a monetary remedy against governmental officials for state constitutional violations are allowed against them *in their official capacity. Corum*, 330 N.C. at 789, 413 S.E.2d at 293; and *see Sale v. Highway Commission*, 242 N.C. 612, 618, 89 S.E.2d 290, 296 (1950). Such a claim is commonly called a "*Corum* claim."

Manifestly, plaintiff's § 1983 claim is dependent on allegations that violation of a federally secured right occurred. *Spell v. McDaniel*, 591 F.Supp. 1090, 1099 (E.D.N.C. 1984). Equally so, plaintiff's *Corum* claim is wholly reliant on allegations making out a state constitutional violation. *Hawkins*, 117 N.C. App. at 630, 453 S.E.2d at 242. Accordingly, plaintiff rests his § 1983 claim on notions of substantive and procedural due process under U.S. Const. amend. XIV, § 1. *See, e.g., McDaniel*, 591 F.Supp. at 1101 (discussing procedural and substantive due process). Plaintiff's *Corum* claim is based on alleged violations of the law of the land clause of the North Carolina Constitution, a provision guaranteeing due process rights separate from, though similar to, those guaranteed by the federal constitution. *See* N.C. Const. art. I, § 19 ("the law of the land clause"); *McNeill v. Harnett County*, 327 N.C. 552, 563, 398 S.E.2d 475, 481 (1990) (Federal constructions of Fourteenth Amendment, although persuasive, do not control interpretations of our law of the land clause's due process protections).

---

1. A § 1983 plaintiff's remedies are limited when the defendants are the State or State officials sued in their official capacity. *Corum*, 330 N.C. at 770-71, 413 S.E.2d at 282-83; *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 66, 105 L. Ed. 2d 45, 55 (1989). In such situations, the § 1983 plaintiff may not seek a monetary remedy, as only injunctive relief will be available. *Corum*, 330 N.C. at 771, 413 S.E.2d at 283; *Kentucky v. Graham*, 473 U.S. 159, 167 n.14, 87 L. Ed. 2d 114, 122 n.14 (1985). These rules would bar the instant plaintiff's suit for monetary damages against Chancellor Fort and Dean Hicks in their official capacities (as State officers), and against North Carolina A & T State University as an agency of the State. *Corum*, 330 N.C. at 771, 413 S.E.2d at 282-83. We do not pursue this analysis further, as it is unnecessary to our resolution of this case.

We find plaintiff's reliance on federal and state due process misplaced. The essence of plaintiff's argument is that the meandering grievance procedure employed by the university administration, combined with the underlying malicious non-reappointment decision of Dr. Mtingwa, deprived him of a property right in his probationary employment without adequate due process of law. This argument fails because plaintiff simply had no property right in the position of which he could be constitutionally deprived—under either the North Carolina or federal constitutions. *See Kilcoyne v. Morgan*, 664 F.2d 940, 942 (4th Cir. 1981), *cert. denied*, 456 U.S. 928, 72 L. Ed. 2d 444 (1982); *Pressman v. UNC-Charlotte*, 78 N.C. App. 296, 302, 337 S.E.2d 644, 648-49 (1985) (discussing *Kilcoyne*), *disc. review allowed*, 315 N.C. 589, 341 S.E.2d 28 (1986), *motion to dismiss allowed by order* (3 June 1986).

In this instance, Dr. Mtingwa's decision to deny plaintiff reappointment was based on personal malice. Because Dr. Mtingwa's decision was tainted by this malice, plaintiff was entitled under his employment contract to appeal this decision through the grievance procedure provided by *The Code of the BOG of the University of North Carolina* (the *BOG Code*). It is unquestionable that the grievance procedure as applied to plaintiff was marked by ineptitude. However, ineptitude is not the same as a denial of due process—at least under these circumstances.

In *Kilcoyne*, the Fourth Circuit faced a situation nearly identical to the instant one. The *Kilcoyne* plaintiff (Kilcoyne) was, much like the instant plaintiff, a probationary, tenure-track professor at East Carolina University (ECU). *Kilcoyne*, 664 F.2d at 941. Kilcoyne was denied reappointment, and he appealed under procedures mandated by the ECU Faculty Manual (the Manual). *Id.* at 942. Kilcoyne maintained that ECU failed to follow the procedures mandated by the Manual as "prescribed by the terms of his employment contract." *Id.* This failure, Kilcoyne argued, violated procedural due process. *Id.*

The *Kilcoyne* Court disagreed, holding that "[b]ecause [Kilcoyne] lacked a right to further employment at ECU, his denial of tenure and further employment without *any* procedural safeguards would have been permissible under the Fourteenth Amendment." *Id.* Failure to provide the procedural safeguards contracted for between a university and a probationary professor may give rise to a contract claim (or, under the right circumstances, to a tort claim), the *Kilcoyne*

Court held, but such an "issue is not elevated to a constitutional question solely because the State is a party to the contract." *Id.*

We discern little difference between the instant case and *Kilcoyne.* Plaintiff points this Court to *Siu v. Johnson,* 748 F.2d 238 (4th Cir. 1984), a case decided subsequent to *Kilcoyne* by the Fourth Circuit—though by a different panel. *Siu* does indeed lend some support to plaintiff's constitutional claims. *Id.* at 243-44. The *Siu* Court alludes, in *dicta,* that an "expectancy" of reappointment "might be elevated to constitutional[] . . . status by contractually binding provisions which, in some form or another, require a regularized decisional process for declining to award tenure." *Id.* at 243. *Siu* lacks persuasiveness as authority though, because the Fourth Circuit limited the potential application of such a constitutional right to situations where "the University's procedures and their application over time [] give[] rise to an institutional 'common law of re-employment' under which the interest created by [a] probationary appointment [is] elevated to something firmer than a mere 'unilateral expectation' " *Id.* at 244 (quoting *Board of Regents v. Roth,* 408 U.S. 564, 578 n.16, 33 L. Ed. 2d 548, 561 n.16 (1972)).

The instant plaintiff argues that an expectancy in re-employment was created since he "was entitled to re-appointment when a non-reappointment decision was based on personal malice." We cannot agree. Neither the instant complaint, nor plaintiff's brief analyzing the complaint, intimate the conditions of "expectancy" discussed by the *Siu* Court. Plaintiff's combination of (1) an employment decision based on malice with (2) a flawed execution of the University's grievance procedure does not constitute the ingredients of constitutional expectancy discussed in *Siu.* Plaintiff's combination of the above two factors exudes an incorrect (if not circular) logic, for it is the malicious decision by Dr. Mtingwa which provided the grounds for the initial grievance. Certainly, plaintiff could not argue that a personally malicious decision not to reappoint, in and of itself, is of constitutional significance. Plaintiff has not alleged any reasonable expectancy of reappointment.

Our hesitation to follow the *Siu dicta* is enhanced further by this Court's prior reliance on *Kilcoyne* in *Pressman. Pressman,* 78 N.C. App. at 302-03, 337 S.E.2d at 648-49. In *Pressman,* a University of North Carolina at Charlotte (UNC-Charlotte) professor, who was ineligible for tenure, argued the University failed to follow the reappointment procedures set forth in the UNC-Charlotte *Code and*

*Tenure Policies Manual*, and the *BOG Code*, in terminating his employment. *Id.* The *Pressman* Court applied the principles elucidated by the Fourth Circuit in *Kilcoyne*, and held that no colorable claim of constitutional dimension existed on such facts. *Id.* Seeing no compelling factual differences between this case, *Pressman*, and *Kilcoyne*, we decline to pursue the path alluded to by the *Siu* Court and urged upon us by plaintiff.

Plaintiff also cites *Skehan v. Board of Trustees of Bloomsburg State College*, 590 F.2d 470 (3d Cir. 1978), *cert. denied*, 444 U.S. 832, 62 L. Ed. 2d 41 (1979), and *Mabey v. Reagan*, 537 F.2d 1036 (9th Cir. 1976) in support of his constitutional claims. The *Skehan* decision is inapplicable here because it involved a nonreappointed professor who was *denied access* to the university grievance procedure guaranteed by his employment contract. *Skehan*, 590 F.2d at 485. There is a significant difference between the complete denial of contractual process in *Skehan* and the flawed process involved here. *Mabey*, on the other hand, involved an unquestionably constitutionally protected interest, that of the State attempting to chill legitimate First Amendment expression. *Mabey*, 537 F.2d at 1044-45. The First Amendment considerations present in *Mabey* conclusively distinguish that case from this one.

This Court does not countenance North Carolina A & T's conduct toward plaintiff. However, neither a 1983 claim, nor a *Corum* claim, will lie where no appropriate protected interest exists. *Corum*, 330 N.C. at 789, 413 S.E.2d at 293. Further, where adequate state remedies exist, no *Corum* claim will lie. *Corum*, 330 N.C. at 782, 413 S.E.2d at 289. The pleadings indicate that plaintiff had a number of alternative state law remedies whereby he could have pursued the damages he seeks. Plaintiff could have sought judicial review of the final BOG decision under Chapter 150B of the Administrative Procedure Act. N.C. Gen. Stat. § 150B-1(f) (1995); and *see Hawkins*, 117 N.C. App. at 629, 453 S.E.2d at 241. Plaintiff also could have sued the University for breach of contract, since " 'the State implicitly consents to be sued for damages on the contract in the event it breaches the contract.' " *Hawkins*, 117 N.C. App. at 629, 453 S.E.2d at 241 (quoting *Smith v. State*, 289 N.C. 303, 320, 222 S.E.2d 412, 424 (1976)).

Plaintiff has not alleged facts supporting a due process claim under either the North Carolina Constitution or the Fourteenth Amendment of the federal constitution. Therefore, neither plaintiff's § 1983 claim nor his *Corum* claim against any defendant are

viable under federal law or North Carolina law. As no cognizable claim is presented by plaintiff's complaint, we affirm the trial court's dismissal.

Affirmed.

Chief Judge ARNOLD and Judge MARTIN, John C., concur.