IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA15-23

 Filed: 17 November 2015

Durham County, No. 14 CVS 2570

HENRY FRAZIER, III, Plaintiff,

 v.

NORTH CAROLINA CENTRAL UNIVERSITY, by and through THE UNIVERSITY
OF NORTH CAROLINA, Defendants.

 Appeal by Plaintiff from order entered 25 August 2014 by Judge Michael

O’Foghludha in Durham County Superior Court. Heard in the Court of Appeals 11

August 2015.

 Law Offices of F. Bryan Brice, Jr., by Matthew D. Quinn, for Plaintiff.

 Attorney General Roy Cooper, by Special Deputy Attorney General Kimberly D.
 Potter, for Defendants.

 STEPHENS, Judge.

 I. Factual Background and Procedural History

 Plaintiff Henry Frazier, III, was employed at North Carolina Central

University (“NCCU”) as head football coach pursuant to a contract for a five-year

period, beginning 1 January 2011 and continuing through 31 December 2015. The

terms of Frazier’s contract provided that his position was “designated as employment

at will and therefore governed by the common law of the State of North Carolina and
 FRAZIER V. N.C. CENT. UNIV.

 Opinion of the Court

not by any statutory SPA [State Personnel Act] or EPA [Exempt Personnel Act]

policies or procedures.” The contract further provided that NCCU could terminate

Frazier’s employment for just cause, which was defined in pertinent part to include

 [a]ny conduct by [Frazier] which constitutes moral
 turpitude, which would constitute a criminal offense under
 North Carolina law, or which would tend to bring public
 disrespect, contempt or ridicule upon [NCCU]. Any
 discipline under this subsection shall not violate the due
 process rights of [Frazier] to defend himself against false
 and/or malicious prosecution or accusations[.]

In the event of any disciplinary action against Frazier, section 3.2 of the contract

required NCCU’s Director of Athletics to give him notice of and an opportunity to

respond to any allegations against him, as well as written notice of any subsequent

disciplinary decisions and the right to request a review of such decisions by NCCU’s

Chancellor.

 On 14 May 2012, Frazier was arrested and charged with misdemeanor assault

on a female following a domestic incident involving his spouse, and a protective order

was entered against him. Frazier was initially placed on administrative leave from

NCCU. After entering into a deferred prosecution agreement with the Wake County

District Attorney, Frazier was allowed to return to his position at NCCU provided he

fully comply with the conditions of his prayer for judgment. At that time, NCCU’s

Chancellor issued Frazier a formal letter of reprimand and notified him that any

 -2-
 FRAZIER V. N.C. CENT. UNIV.

 Opinion of the Court

additional incidents of this kind would be cause for more severe disciplinary actions,

up to and including dismissal.

 On 19 August 2013, Frazier was arrested for violating the aforementioned

protective order. That same day, NCCU’s Director of Athletics, Dr. Ingrid Wicker-

McCree notified Frazier by letter that he was suspended with full pay while NCCU

collected additional information regarding his arrest. On 22 August 2013, after

meeting with Frazier and providing him an opportunity to respond to the allegations

against him, Wicker-McCree notified Frazier by letter of her decision to terminate his

employment. In her letter, Wicker-McCree explained:

 It is my intent to discharge you for behavior that has
 brought public disrespect, contempt and ridicule upon
 [NCCU], the Department of Intercollegiate Athletics and
 the football program. . . .

 ....

 During our meeting, you provided me with your position
 regarding your performance as Head Coach and outlined
 your achievements to date. You also indicated that while
 you understood [NCCU’s] concerns regarding these
 matters, you did not believe that these issues have had a
 negative impact on your job performance or your ability to
 lead the program. During our discussion, it became clear to
 me that you did not have an appreciation of the impact
 these types of behaviors, your arrest and the resulting
 negative publicity can and have had on our student
 athletes, the program and [NCCU]. This was especially
 disturbing, in light of the fact that you were severely
 reprimanded for similar behaviors in July 2012. Your
 recent arrest for violation of a domestic protective order,
 stemming from your May 2012 arrest, . . . has once again

 -3-
 FRAZIER V. N.C. CENT. UNIV.

 Opinion of the Court

 generated local, regional and national media stories and
 opinions that have harmed the reputation of [NCCU] and
 our athletics program.

Frazier’s contract expressly provided that he had the right to appeal any decision by

the Director of Athletics to take disciplinary action against him to NCCU’s

Chancellor. On 29 August 2013, Frazier’s New York-licensed attorney, Linda Kenney

Baden, sent a letter to NCCU Chancellor Debra Saunders-White appealing Wicker-

McCree’s decision. In a letter dated 25 September 2013, Saunders-White informed

Frazier that she had considered his request for reinstatement but ultimately

concluded—in light of his previous arrest in May 2012, the resulting deferred

prosecution and letter of reprimand from NCCU’s former Chancellor, and Frazier’s

“current arrest, and blatant disregard for [NCCU] directives [,which] are inconsistent

with the position as Head Coach, a position charged with modeling behaviors for

students”—that “there is sufficient basis to support your for cause termination” and

therefore upheld Wicker-McCree’s decision.

 On 30 September 2013, Frazier was acquitted of the charges that led to his

most recent arrest. On 1 October 2013, Frazier’s attorney, Kenney Baden, sent a

letter to NCCU’s general counsel, Melissa Jackson Holloway, requesting that NCCU

reconsider its decision to terminate her client’s employment, and inquiring whether

Frazier was required to complete any further internal or more formal appeals process

“before legal action ensues.” In a letter dated 11 October 2013, Jackson Holloway

 -4-
 FRAZIER V. N.C. CENT. UNIV.

 Opinion of the Court

confirmed that “[i]t is [NCCU’s] position that Coach Frazier has exhausted his

campus based appeals rights” and also stated that the terms of Frazier’s contract

precluded him “from pursuing avenues of appeal/review provided for in the State

Personnel Act (governing SPA employees) and/or the NCCU EPA non faculty

employment policies (governing EPA non faculty employees) including, but not

limited to, a review of the termination decision by the NCCU Board of Trustees. . . .”

However, Jackson Holloway also cautioned Frazier’s attorney that

 given my role as counsel to [NCCU], I am not in the
 position to identify all of the claims that you believe your
 client may have against [NCCU] and/or its representatives
 or to identify every potential statutory or other
 requirement to pursue such claims. I would respectfully
 suggest that you obtain NC local counsel to ensure your
 understanding of state contract law, the North Carolina
 Tort Claims Act and other relevant statutes, case law and
 other authority applicable to any claims your client may
 have.

On 8 April 2014, after hiring a North Carolina-licensed attorney, Frazier filed a

complaint in Durham County Superior Court against NCCU and the Board of

Governors of the University of North Carolina seeking compensatory and punitive

damages for breach of contract, wrongful discharge in violation of public policy, and

breach of the covenant of good faith and fair dealing. With NCCU’s consent, Frazier

subsequently amended his complaint three times in order to attach an accurate copy

of his contract and correct certain typographical errors.

 -5-
 FRAZIER V. N.C. CENT. UNIV.

 Opinion of the Court

 On 5 June 2014, NCCU filed a motion to dismiss all of Frazier’s claims

pursuant to Rule 12(b)(1), (2), and (6) of the North Carolina Rules of Civil Procedure

based on sovereign immunity, lack of subject matter jurisdiction, lack of personal

jurisdiction, and failure to state a claim upon which relief can be granted, given the

fact that Frazier failed to exhaust his administrative remedies under our State’s

Administrative Procedure Act (“APA”) and also failed to allege in any of his

complaints that the available administrative procedures and remedies were

inadequate. The trial court held a hearing on this motion on 12 August 2014, and on

25 August 2014, it entered an order granting NCCU’s motion and dismissing

Frazier’s claims with prejudice. On 22 September 2014, Frazier gave notice of appeal

to this Court.

 II. Analysis

 Frazier argues that by terminating his employment before he had the

opportunity to defend himself in court, NCCU violated his contractual right to due

process. However, the scope of our review in the present case focuses not on the merits

of Frazier’s claim but instead on the threshold issue of whether the trial court erred

in granting NCCU’s motion to dismiss. On that point, Frazier argues that the trial

court erred in dismissing his complaint because: (1) his contract did not require him

to exhaust administrative remedies available under the APA; (2) NCCU waived its

sovereign immunity by entering into the contract with him; and (3) by pleading all

 -6-
 FRAZIER V. N.C. CENT. UNIV.

 Opinion of the Court

the elements of a claim for breach of contract, his complaint adequately alleged that

any available administrative remedies were inadequate. We disagree.

 A. Background Law

 This Court’s standard of review for a motion to dismiss pursuant to N.C.R. Civ.

P. 12(b)(1) is de novo. See Country Club of Johnston Cnty., Inc. v. U.S. Fid. & Guar.

Co., 150 N.C. App. 231, 238, 563 S.E.2d 269, 274 (2002).

 A motion to dismiss under Rule 12(b)(1) for lack of subject
 matter jurisdiction may be raised at any time. Subject
 matter jurisdiction is a prerequisite for the exercise of
 judicial authority over any case or controversy. An action
 is properly dismissed for lack of subject matter jurisdiction
 when the plaintiff has failed to exhaust his administrative
 remedies. Where the legislature has provided by statute an
 effective administrative remedy, that remedy is exclusive
 and its relief must be exhausted before recourse may be
 had to the courts.

Hentz v. Asheville City Bd. of Educ., 189 N.C. App. 520, 522, 658 S.E.2d 520, 521-22

(2008) (citations, internal quotation marks, and brackets omitted). Thus, “[a]n action

is properly dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction where

the plaintiff has failed to exhaust administrative remedies.” Johnson v. Univ. of N.C.,

202 N.C. App. 355, 357, 688 S.E.2d 546, 548 (2010) (citation omitted).

 It is well established that the actions of the University of North Carolina (“the

University”) and its constituent institutions—which include NCCU, see N.C. Gen.

Stat. § 116-4 (2013)—are “specifically made subject to the judicial review procedures”

provided by N.C. Gen. Stat. § 150B-43. Huang v. N.C. State Univ., 107 N.C. App. 710,

 -7-
 FRAZIER V. N.C. CENT. UNIV.

 Opinion of the Court

713, 421 S.E.2d 812, 814 (1992). Section 150B-43 of our General Statutes provides in

pertinent part that, “[a]ny party or person aggrieved by the final decision in a

contested case, and who has exhausted all administrative remedies made available

to the party or person aggrieved by statute or agency rule, is entitled to judicial review

of the decision[.]” N.C. Gen. Stat. § 150B-43 (2013). To obtain judicial review of a final

decision, the person aggrieved by the decision must file a petition in the superior court

of the county where that person resides within 30 days after being served with a

written copy of the final decision. N.C. Gen. Stat. § 150B-45 (2013). The petition “shall

explicitly state what exceptions are taken to the decision or procedure and what relief

the petitioner seeks.” N.C. Gen. Stat. § 150B-46 (2013). In reviewing a final decision,

the superior court

 may affirm the decision or remand the case for further
 proceedings. It may also reverse or modify the decision if
 the substantial rights of the petitioners may have been
 prejudiced because the findings, inferences, conclusions, or
 decisions are:

 (1) In violation of constitutional provisions;

 (2) In excess of the statutory authority or jurisdiction of the
 agency or administrative law judge;

 (3) Made upon unlawful procedure;

 (4) Affected by other error of law;

 (5) Unsupported by substantial evidence . . . in view of the
 entire record as submitted; or

 -8-
 FRAZIER V. N.C. CENT. UNIV.

 Opinion of the Court

 (6) Arbitrary, capricious, or an abuse of discretion.

N.C. Gen. Stat. § 150B-51(b) (2013). This Court’s prior holdings amply demonstrate

that a trial court lacks subject matter jurisdiction to hear an action challenging a

final decision by the University unless the plaintiff has exhausted all available

administrative remedies, including seeking judicial review pursuant to section 150B-

43, or his complaint alleges the administrative remedies available to him are

inadequate. Huang, 107 N.C. App. at 715-16, 421 S.E.2d at 815-16.

 In Huang, for example, the plaintiff had been terminated from his position as

a tenured professor at N.C. State University (“NCSU”) after he was arrested for

attempted rape. Id. at 711-12, 421 S.E.2d at 813-14. As provided by the

administrative remedies made available to him by the Code of the Board of Governors

of the University, Huang had sought a hearing from NCSU’s Faculty Hearing

Committee, which ultimately recommended his discharge. Id. at 712, 421 S.E.2d at

813. Thereafter, Huang appealed the termination decision to NCSU’s Board of

Governors, which agreed to hear certain portions of his petition. Id. However, while

that appeal was still pending, Huang filed a complaint in superior court seeking

compensatory and punitive damages against NCSU and requesting a jury trial for,

inter alia, breach of contract. Id. at 712, 421 S.E.2d at 814. After Huang was granted

summary judgment on his breach of contract claim, NCSU appealed to this Court

arguing that the trial court lacked jurisdiction to hear the action because Huang had

 -9-
 FRAZIER V. N.C. CENT. UNIV.

 Opinion of the Court

failed to exhaust his administrative remedies before filing his claim. Id. For his part,

Huang argued that he had exhausted his administrative remedies “because [NCSU’s]

Board [of Governors] had reached its final decision [on his appeal] prior to the time

summary judgment was actually granted by the trial court.” Id. Alternatively, Huang

argued that he was free to file his breach of contract claim against NCSU directly in

the superior court without exhausting administrative remedies “because

administrative action could not grant him the relief to which he is allegedly entitled.”

Id.

 On appeal, we first explained that “[b]ecause no statutory administrative

remedies are made available to employees of the University, those who have

grievances with the University have available only those administrative remedies

provided by the rules and regulations of the University and must exhaust those

remedies before having access to the courts.” Id. at 713-14, 421 S.E.2d at 814.

“Therefore, before a party may ask the courts for relief from a University decision: (1)

the person must be aggrieved; (2) there must be a contested case; and (3) the

administrative remedies provided by the University must be exhausted.” Id. at 714,

421 S.E.2d at 814. We ultimately concluded that because Huang filed his action in

superior court while his appeal to NCSU’s Board of Governors remained pending,

“Huang did not exhaust his University remedies prior to filing his claim in superior

court and the court therefore did not have jurisdiction.” Id. at 714, 421 S.E.2d at 815.

 - 10 -
 FRAZIER V. N.C. CENT. UNIV.

 Opinion of the Court

In so holding, we rejected Huang’s argument that his premature filing in superior

court was “cured” by the fact that NCSU’s Board of Governors rendered a decision on

his appeal before the trial court entered summary judgment. We explained: “To adopt

Huang’s contention would make it impossible for the trial court to perform its

function of reviewing the administrative proceedings based on the completed

administrative record.” Id. (emphasis added). We then emphasized the various ways

that the proceedings on Huang’s claim in the trial court had diverged from the review

process mandated by section 150B-43:

 The trial court did not have before it the complete
 administrative record, as required by [section] 150B-47.
 Indeed[,] the trial court conducted a de novo hearing, not a
 review of the record of the agency proceedings. This is so
 even though the trial court was made aware of the Board’s
 decision prior to entering summary judgment.
 Furthermore, Huang filed a complaint in superior court
 seeking compensatory and punitive damages. The correct
 procedure for seeking review of an administrative decision
 is to file a petition in the court explicitly stating what
 exceptions are taken to the administrative decision. This
 judicial review is to be conducted without a jury. Huang
 specifically requested a jury trial.

Id. at 714-15, 421 S.E.2d at 815 (citations, internal quotation marks, and brackets

omitted). Moreover, in explaining the rationale behind our holding that Huang’s

breach of contract claim was barred by his failure to fully exhaust his available

administrative remedies and his failure to file a petition for judicial review as

required by section 150B-43, we observed that “the policy of requiring the exhaustion

 - 11 -
 FRAZIER V. N.C. CENT. UNIV.

 Opinion of the Court

of administrative remedies prior to the filing of court actions does not require merely

the initiation of prescribed administrative procedures, but that they should be

pursued to their appropriate conclusion and their final outcome awaited before

seeking judicial intervention[.]” Id. at 715, 421 S.E.2d at 815 (citation and internal

quotation marks omitted).

 We also rejected Huang’s alternative argument that he was not required to

exhaust his administrative remedies before filing an action in superior court because

the only administrative remedies available to him were inadequate. Id. at 716, 421

S.E.2d at 816. While acknowledging that “exhaustion of administrative remedies is

not required when the only remedies available from the agency are shown to be

inadequate,” we made clear that “[t]he burden of showing the inadequacy of the

administrative remedy is on the party claiming the inadequacy, and the party making

such a claim must include such allegation in the complaint,” which we noted “should

be carefully scrutinized to ensure that the claim for relief is not inserted for the sole

purpose of avoiding the exhaustion rule.” Id. at 715, 421 S.E.2d at 815-16 (citations,

internal quotation marks, and brackets omitted). Thus, although Huang argued on

appeal to this Court that his available administrative remedies “[did] not provide him

an opportunity for monetary relief to the same degree requested in the complaint,”

which sought compensatory and punitive damages for breach of contract, we held—

based on our examination of his complaint and the record before the trial court,

 - 12 -
 FRAZIER V. N.C. CENT. UNIV.

 Opinion of the Court

neither of which specifically alleged the inadequacy of his available administrative

remedies—that Huang had failed to properly raise the alleged inadequacy issue and

that his complaint therefore should have been dismissed for this reason as well. Id.

at 716, 421 S.E.2d at 816.

 In cases since Huang, this Court has consistently and repeatedly held that a

trial court lacks jurisdiction to hear breach of contract claims brought by University

employees who failed to first exhaust their administrative remedies, including

petitioning for judicial review pursuant to section 150B-43. See, e.g., Tucker v.

Fayetteville State Univ., __ N.C. App. __, __,767 S.E.2d 60, 63 (2014) (holding that the

trial court lacked subject matter jurisdiction over a former University basketball

coach’s complaint seeking compensatory damages for breach of contract where the

plaintiff failed to meet his burden of showing that the administrative remedies

available were inadequate, and where he also sought to avoid the exhaustion

requirement by retiring upon being notified that grounds existed for his termination,

thereby skipping the required internal administrative appeals procedures, and then

filing suit in superior court instead), disc. review denied, __ N.C. __, 768 S.E.2d 854

(2015); Johnson, 202 N.C. App. at 359, 688 S.E.2d at 549 (holding that the trial court

lacked subject matter jurisdiction to hear a complaint by an assistant University

professor who failed to exhaust his available administrative remedies, and rejecting

the professor’s argument that he was not required to exhaust those remedies because

 - 13 -
 FRAZIER V. N.C. CENT. UNIV.

 Opinion of the Court

the University’s relevant policies provided that a faculty member “may”—rather than

“shall”—appeal an adverse decision internally); Hentz, 189 N.C. App. at 523-24, 658

S.E.2d at 522-23 (holding based on Huang that the trial court lacked subject matter

jurisdiction to hear a complaint against the city’s board of education and school

superintendent for, inter alia, breach of contract because the plaintiff filed suit in

superior court while her administrative appeal was still pending and her complaint

failed to allege that the available remedies were inadequate); see also Hedgepeth v.

Winston-Salem State Univ., __ N.C. App. __, 753 S.E.2d 741 (2013) (unpublished),

available at 2013 WL 6237445.1

 B. Frazier’s Appeal

 In the present case, rather than filing a petition for judicial review of NCCU’s

decision to terminate his employment within 30 days of receiving the 11 October 2013

letter informing him that he had exhausted all on-campus appeal procedures, Frazier

waited roughly six months and then filed the present lawsuit. During the hearing on

1 Although Rule 30(e)(3) of North Carolina’s Rules of Appellate Procedure holds that this Court’s
unpublished decisions do not constitute controlling legal authority, the facts and procedural posture
of Hedgepeth are strikingly similar to those of the present case. In Hedgepeth, we held—based on
Huang, Johnson, and Hentz—that the trial court did not err in dismissing an action for breach of
contract by a University employee who, by failing to petition for judicial review pursuant to section
150B-43, had not exhausted her available administrative remedies and also failed to allege in her
complaint that such remedies were inadequate. Indeed, during arguments below in the present case,
counsel for NCCU specifically cited Hedgepeth as support for NCCU’s motion to dismiss and, just
before granting the motion, the trial court stated, “If the Hedgepeth case was published it would be
right on point; it’s not, so it has no precedential value.” Thus, although the trial court was correct that
because Hedgepeth was unpublished it does not control the result here, we nevertheless find its
reasoning persuasive for the reason that, inter alia, it followed the well-established precedent on which
it relied.

 - 14 -
 FRAZIER V. N.C. CENT. UNIV.

 Opinion of the Court

NCCU’s motion to dismiss and again in his brief to this Court, Frazier has raised

several related arguments as to why his claims should be exempt from the

requirements of the APA and section 150B-43. We find none of them persuasive.

 (1) Applicability of the APA to Frazier’s employment contract

 We turn first to Frazier’s argument that the APA does not apply to his claims

at all because his contract with NCCU prohibited the use of any statutory

administrative procedures for resolving disputes between the parties. In support of

this argument, Frazier notes that the dispute-resolution process outlined by section

3.2 of his contract makes no reference to the APA, and he also emphasizes the

contract’s express provision that his position was “designated as employment at will

and therefore governed by the common law of the State of North Carolina and not by

any statutory SPA or EPA policies or procedures.” In Frazier’s view, the fact that the

11 October 2013 letter confirmed that he had exhausted the internal appeal process

required by his contract, and that his contract prevented him “from pursuing avenues

of appeal/review provided for in the State Personnel Act,” proves that there were no

administrative procedures for him to utilize before filing a lawsuit.

 This argument is unavailing. There is no dispute that NCCU is a member of

the University system and therefore, as noted supra, the APA makes NCCU’s actions

subject to judicial review under section 150B-43. Nothing in Frazier’s contract

expressly purports to exempt him from the APA’s procedures, and we do not believe

 - 15 -
 FRAZIER V. N.C. CENT. UNIV.

 Opinion of the Court

the mere fact that the contract states that the EPA and SPA do not apply has any

bearing on this issue. In this Court’s recent decision in Tucker, we construed a similar

contractual provision that exempted the plaintiff University basketball coach from

the SPA to mean that his position was subject to the University’s internal grievance

and dispute-resolution procedures, and not the statutory scheme outlined in chapter

126 of our General Statutes, where the SPA is codified. See Tucker, __ N.C. App. at

__, 767 S.E.2d at 62. We then concluded that “[o]nce [the] plaintiff completed that

process, he would have been entitled to judicial review of the decision [to terminate

his contract] pursuant to N.C. Gen. Stat. § 150B-43.” Id. Similarly here, we construe

the language Frazier highlights to mean that the procedure for disputing NCCU’s

decision to terminate his employment was controlled by section 3.2 of his contract,

rather than the SPA or EPA. Our review of the record demonstrates that NCCU

followed those procedures and also reveals, contrary to Frazier’s characterization of

the 11 October 2013 letter, that NCCU’s general counsel explicitly warned Frazier’s

attorney that she was “not in the position to identify all of the claims that you believe

your client may have against [NCCU] and/or its representatives or to identify every

potential statutory or other requirement to pursue such claims” before advising

Frazier to obtain local counsel familiar with our State’s laws. Given that neither the

express language of Frazier’s contract nor the 11 October 2013 letter suggested that

 - 16 -
 FRAZIER V. N.C. CENT. UNIV.

 Opinion of the Court

the APA was inapplicable, and in light of well-established precedent, we conclude this

argument is without merit.

 (2) Frazier’s failure to exhaust available administrative remedies

 Frazier argues next that because NCCU waived its sovereign immunity by

entering into a contract with him, he was not required to exhaust administrative

remedies, and therefore the trial court erred in dismissing his claims. In support of

this argument, Frazier relies on our Supreme Court’s holding in Smith v. State, 289

N.C. 303, 222 S.E.2d 412 (1976), that “whenever the State of North Carolina, through

its authorized officers and agencies, enters into a valid contract, the State implicitly

consents to be sued for damages on the contract in the event it breaches the contract.”

Id. at 320, 222 S.E.2d at 423. Frazier concedes that the holding in Smith was

restricted by our Supreme Court’s subsequent holding in Middlesex Constr. Corp. v.

State, 307 N.C. 569, 299 S.E.2d 640 (1983), rehearing denied, 310 N.C. 150, 312

S.E.2d 648 (1984), which confirmed that “under its limited terms, Smith permitted

suits against the State where none could be brought otherwise,” but also clarified that

 [t]he Smith Court abolished sovereign immunity in only
 those cases where an administrative or judicial
 determination was not available. It did so by finding that
 the State had implicitly consented to be sued by entering
 into a valid contract. Unaffected by the decision were those
 contractual situations in which the State had waived its
 immunity by statute, thereby expressly consenting to suit.

 - 17 -
 FRAZIER V. N.C. CENT. UNIV.

 Opinion of the Court

Id. at 574-75, 299 S.E.2d at 643 (emphasis in original). As noted supra, our decision

in Huang demonstrated that section 150B-43 functions as exactly the type of

statutory waiver contemplated by Middlesex, and our decisions since Huang confirm

that a University employee who fails to exhaust the administrative remedies that

section 150B-43 provides is barred from bringing a subsequent, separate action in

superior court for breach of contract. See, e.g., Tucker, __ N.C. App. at __,767 S.E.2d

at 63; Johnson, 202 N.C. App. at 359, 688 S.E.2d at 549; Hentz, 189 N.C. App. at 523-

24, 658 S.E.2d at 522-23; Hedgepeth, 2013 WL 6237445 at *4.

 However, Frazier contends that Huang is obsolete and that this Court has long

since abandoned its exhaustion requirement in circumstances like his, where a party

seeks monetary damages for breach of contract. Specifically, Frazier insists that the

fact the APA does not provide for breach of contract damages means that judicial

review under section 150B-43 is not an adequate remedy, which in Frazier’s view

means that he has not failed to exhaust his administrative remedies. In support of

his argument, Frazier relies heavily on this Court’s decision in Ware v. Fort, 124 N.C.

App. 613, 478 S.E.2d 218 (1996), which he claims contradicted and abandoned Huang

by holding that the proper venue for a breach of contract claim is in superior court,

rather than an APA proceeding.

 There are several reasons why this argument fails. On the one hand, we note

that our holding in Huang has never been overruled by our Supreme Court, and it is

 - 18 -
 FRAZIER V. N.C. CENT. UNIV.

 Opinion of the Court

well established that “[w]here a panel of the Court of Appeals has decided the same

issue, albeit in a different case, a subsequent panel of the same court is bound by that

precedent, unless it has been overturned by a higher court.” In re Appeal from Civil

Penalty, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989) (citations omitted). On the other

hand, we find Frazier’s reliance on Ware to be entirely misplaced. The plaintiff in

Ware was a probationary professor at N.C. A&T State University who brought a claim

under 42 U.S.C. § 1983 and a Corum claim under the North Carolina Constitution

after his contract expired and he was not reappointed to the faculty. 124 N.C. App. at

614, 478 S.E.2d at 219. The trial court dismissed these claims, and we affirmed that

dismissal because we found no basis for the alleged violation of the plaintiff’s due

process rights under either the United States Constitution or the North Carolina

Constitution, and because “neither a [section] 1983 claim, nor a Corum claim, will lie

where no appropriate protected interest exists.” Id. at 619, 478 S.E.2d at 222 (citation

omitted). We further observed that

 where adequate state remedies exist, no Corum claim will
 lie. The pleadings indicate that [the] plaintiff had a number
 of alternative state law remedies whereby he could have
 pursued the damages he seeks. [The p]laintiff could have
 sought judicial review of the final BOG decision under
 Chapter 150B of the [APA]. [The p]laintiff also could have
 sued the University for breach of contract, since the State
 implicitly consents to be sued for damages on the contract
 in the event it breaches the contract.

 - 19 -
 FRAZIER V. N.C. CENT. UNIV.

 Opinion of the Court

Id. (citations and internal quotation marks omitted). Despite Frazier’s claims to the

contrary, our decision in Ware did not purport to abandon, or even reference, Huang,

nor did it posit any sort of general rule that suits for breach of contract damages are

somehow exempt from the APA’s exhaustion requirement. Indeed, Ware had nothing

to with the APA and, when viewed in its full context, it is abundantly clear that the

single sentence Frazier’s argument revolves around was stated, in dicta, as one

alternative state law remedy the plaintiff could have pursued instead of filing a

Corum claim. Moreover, to accept Frazier’s contention that Huang is obsolete as a

result of Ware would also require us to ignore our Supreme Court’s holding in In re

Appeal from Civil Penalty, which we are not at liberty to do. Given that the facts,

procedural posture, and arguments raised on appeal in the present case are virtually

identical to those at issue in Huang, we cannot escape the conclusion that our decision

in Huang must control the result we reach here. Here, as in Huang, a constituent

member of the UNC system is being sued by a former employee who seeks

compensatory and punitive damages in an action for breach of contract. Like the

plaintiff in Huang, Frazier failed to file a petition for judicial review as required by

section 150B-43 before filing his complaint in superior court. We therefore conclude

that here, as in Huang, Frazier has failed to exhaust his available administrative

remedies.

 - 20 -
 FRAZIER V. N.C. CENT. UNIV.

 Opinion of the Court

 (3) Frazier’s failure to allege inadequacy of available administrative remedies

 Frazier argues further that the trial court erred in dismissing his claim

because his available administrative remedies were inadequate in light of the

compensatory and punitive damages he sought in his complaint for breach of contract.

Frazier also contends that by merely alleging an action for breach of contract, he

sufficiently alleged that his available administrative remedies were inadequate. In

support of this argument, Frazier cites this Court’s prior decisions in S. Furniture Co.

of Conover, Inc. v. Dep’t of Transp., 122 N.C. App. 113, 468 S.E.2d 523 (1996), disc.

review improvidently allowed, 346 N.C. 169, 484 S.E.2d 552 (1997), and Sanders v.

State Pers. Comm’n, 183 N.C. App. 15, 644 S.E.2d 10, appeal dismissed and disc.

review denied, 361 N.C. 696, 652 S.E.2d 654 (2007). However, we find Frazier’s

reliance on S. Furniture and Sanders unavailing. While Frazier is correct that in both

those cases, we held that the plaintiffs’ lawsuits were not barred because the

administrative remedies available to them were inadequate to address their

underlying claims for breach of contract damages, his argument overlooks critical

distinctions between the present facts and the nature of the claims and

administrative remedies at issue in S. Furniture and Sanders.

 In S. Furniture, the plaintiff property owner contended that when it granted

the Department of Transportation (“DOT”) a right-of-way over its land for highway

access in 1953, DOT agreed to maintain a secondary road and a median crossover on

 - 21 -
 FRAZIER V. N.C. CENT. UNIV.

 Opinion of the Court

the highway. 122 N.C. App. at 114, 468 S.E.2d at 524. Nearly four decades later, when

DOT closed the median and blocked access to the secondary road, the plaintiff sued

for breach of contract. Id. Citing Middlesex, DOT argued that the plaintiff’s suit was

barred by sovereign immunity because it had an administrative remedy available

through section 136-111 of our General Statutes, which provides for special

proceedings for inverse condemnation. Id. at 115, 468 S.E.2d at 525. However, we

rejected this argument because section 136-111 “does not provide a procedure for [the]

plaintiff’s breach of contract claim and [DOT] has cited no other statutory procedure

which would control [the] plaintiff’s breach of contract action,” which left the plaintiff

“completely foreclosed, under the doctrine of sovereign immunity, from obtaining

administrative or judicial relief in a contract action against the State.” Id. at 116, 468

S.E.2d at 525. Such is clearly not the case here.

 In Sanders, the plaintiffs were a group of State employees who alleged they

were wrongfully denied employment benefits after working for more than 12 months

as temporary employees and who brought suit for breach of contract as well as claims

under the North Carolina Constitution and the North Carolina Administrative Code.

183 N.C. App. at 16-17, 644 S.E.2d at 11. In analyzing whether the trial court had

erred in dismissing the plaintiffs’ breach of contract action based on sovereign

immunity, we focused on “whether [their] complaint contains sufficient allegations to

support a finding of waiver of sovereign immunity.” Id. at 19, 644 S.E.2d at 13.

 - 22 -
 FRAZIER V. N.C. CENT. UNIV.

 Opinion of the Court

Because the complaint alleged that the defendants were “manipulating State

personnel policies and benefit plans, which govern the terms of state employment, to

avoid providing [the] plaintiffs benefits that they rightfully earned as a result of the

tenure of their employment,” we concluded based on Smith and a line of cases

involving similar allegations against the State by employees claiming they were

wrongfully denied benefits—see Peverall v. Cty. of Alamance, 154 N.C. App. 426, 573

S.E.2d 517 (2002), disc. review denied, 356 N.C. 676, 577 S.E.2d 632 (2003); Hubbard

v. Cty. of Cumberland, 143 N.C. App. 149, 544 S.E.2d 587, disc. review denied, 354

N.C. 69, 553 S.E.2d 40 (2001)—that the complaint “sufficiently alleges that [the]

defendants accepted [the] plaintiffs’ services and, therefore, may not claim sovereign

immunity as a defense to their alleged commitment to provide the benefits provided

by the personnel policies setting forth the terms of employment.” Id. at 20, 644 S.E.2d

at 13 (citation and internal quotation marks omitted). The State argued that the

plaintiffs’ breach of contract claim should nevertheless be barred based on Middlesex.

However, we rejected this argument because the State “pointed to no statute

specifically affording [the] plaintiffs relief for their breach of contract claims,” but

instead relied on “generalized statutory and administrative provisions allowing for

declaratory—but not monetary or injunctive—relief from administrative agencies.”

Id. at 22, 644 S.E.2d at 15 (citation omitted). In light of our determination that “this

case does not present a situation in which the State has by statute waived sovereign

 - 23 -
 FRAZIER V. N.C. CENT. UNIV.

 Opinion of the Court

immunity for a specific type of claim, but set forth procedural requirements as

conditions precedent to any lawsuit,” we held that the trial court erred in dismissing

the plaintiffs’ breach of contract claim. Id.

 In the present case, Frazier contends that S. Furniture and Sanders

demonstrate that the APA is categorically inapplicable to claims seeking monetary

damages for breach of contract, and therefore urges us to hold that the trial court

erred in dismissing his complaint—which he contends, by seeking compensatory and

punitive damages, sufficiently alleged that his available administrative remedies

were inadequate. We find this argument unpersuasive. Notably, Frazier’s argument

ignores the fact that neither S. Furniture (in which the State argued the plaintiff

failed to exhaust his administrative remedies available under section 136-111 of our

General Statutes) nor Sanders (in which the State failed to cite any specific statutory

procedure the plaintiffs had failed to exhaust) purported to address the adequacy of

the administrative remedies provided by section 150B-43. Further, Frazier’s

argument overlooks fundamental differences between the facts from which his claim

for breach of contract damages arose and those at issue in S. Furniture and Sanders.

Moreover, we are unpersuaded by the superficial distinctions he attempts to draw

between the present facts and those at issue in our decisions in Tucker and

Hedgepeth, which involved strikingly similar fact patterns as are present here and in

which we concluded, in keeping with Huang, that the trial court lacked subject matter

 - 24 -
 FRAZIER V. N.C. CENT. UNIV.

 Opinion of the Court

jurisdiction to hear claims for breach of contract damages filed by University

employees who failed to exhaust their available administrative remedies and failed

to allege the inadequacy of those remedies in their complaints. See Tucker, __ N.C.

App. at __, 767 S.E.2d at 63; Hedgepeth, 2013 WL 6237445 at *4. Moreover, Frazier’s

argument on this point also presumes the validity of his earlier, related argument—

which we have already rejected for the reasons explained supra—that our decision in

Huang was somehow overruled by our subsequent decision in Ware.

 In our view, here again, Huang is directly on point with the facts and

procedural posture of the present case, and consequently controls the outcome. Like

the plaintiff in Huang, Frazier argues that his claim for compensatory and punitive

damages renders the administrative remedies available pursuant to section 150B-43

inadequate. 107 N.C. App. at 715, 421 S.E.2d at 815. However, as we made clear in

Huang, “[t]he burden of showing the inadequacy of the administrative remedy is on

the party claiming the inadequacy, and the party making such a claim must include

such allegation in the complaint.” Id. Neither Frazier’s original complaint nor any of

his three amended complaints makes any such allegation of inadequacy. Although we

have held that “[p]recise language alleging that the State has waived the defense of

sovereign immunity is not necessary,” so long as the complaint “contain[s] sufficient

allegations to provide a reasonable forecast of waiver,” Richmond Cty. Bd. of Educ. v.

Cowell, 225 N.C. App. 583, 587, 739 S.E.2d 566, 569 (citation and internal quotation

 - 25 -
 FRAZIER V. N.C. CENT. UNIV.

 Opinion of the Court

marks omitted), disc. review denied, 367 N.C. 215, 747 S.E.2d 553 (2013), Frazier’s

argument that his complaint provides such a forecast fails because it is based entirely

on the fact that his complaint pleads a claim for breach of contract damages. Our

analysis of the relevant case law demonstrates that merely pleading a claim for

breach of contract is not sufficient, standing alone, to adequately allege that judicial

review pursuant to section 150B-43 is an inadequate remedy under circumstances

like those presented here. See Huang, 107 N.C. App. at 716, 421 S.E.2d at 816;

Tucker, __ N.C. App. at __, 767 S.E.2d at 63; Hedgepeth, 2013 WL 6237445 at *4.

Therefore, as in Huang, we conclude that Frazier failed to properly allege the

administrative remedies available to him were inadequate.

 Frazier may well be correct in contending that judicial review pursuant to

section 150B-43 does not provide for the compensatory or punitive damages he seeks

in conjunction with his breach of contract claim, but we are not convinced that this

necessarily renders it an inadequate remedy or otherwise obviates the APA’s general

exhaustion requirement. Indeed, we believe that Frazier’s argument misapprehends

the purpose of judicial review under the APA in this context, which, as Huang implies,

is to promote judicial economy by providing a forum for efficiently resolving personnel

disputes between the University and its employees based on a review of “the

completed administrative record” in a less formalized setting before allowing the

plaintiff to seek further judicial intervention. 107 N.C. App. at 714-15, 421 S.E.2d at

 - 26 -
 FRAZIER V. N.C. CENT. UNIV.

 Opinion of the Court

815. In the present case, had Frazier timely filed a petition for judicial review as the

APA requires, the superior court would have been authorized to review the record

and determine whether NCCU’s decision to terminate his employment was based on

an error of law or procedure, lacked substantial supporting evidence, or was arbitrary

or capricious or otherwise constituted an abuse of discretion. See N.C. Gen. Stat. §

150B-51. Frazier contends that such judicial review would have been futile and

inadequate because even if the superior court agreed with his arguments, the only

relief it could afford him would be to remand his case back to NCCU and the same

administrators who, he contends, wrongfully terminated his contract. This Court,

however, has previously rejected similar arguments and instead held that “futility

cannot be established by [the] plaintiffs’ prediction or anticipation that [the

University] would again rule adversely to [the] plaintiffs’ interests.” See Affordable

Care, Inc. v. N.C. State Bd. of Dental Examiners, 153 N.C. App. 527, 534, 571 S.E.2d

52, 58 (2002).

 Because Frazier failed to exhaust his available administrative remedies

pursuant to section 150B-43, and also failed to adequately allege that those remedies

were inadequate, we hold that the trial court did not err in dismissing his complaint.

Accordingly, the trial court’s decision is

 AFFIRMED.

 Judges BRYANT and DIETZ concur.

 - 27 -